RUBY GRAVES v. CHARLES M. HARRINGTON AND C. M. HARRINGTON, JR., TRADING AND DOING BUSINESS AS HYMAN SUPPLY COMPANY

No. 695SC541

(Filed 17 December 1969)

1. **Negligence § 35— nonsuit for contributory negligence — sufficiency of evidence**

In this action for personal injuries sustained by plaintiff when her face struck pipe protruding from defendants' truck as she left her place of

employment, plaintiff's evidence did not disclose contributory negligence on her part as a matter of law but presented jury questions as to whether she was contributorily negligent in failing to see the pipe, in walking down the pedestrian ramp under the circumstances disclosed by the evidence, and in momentarily turning her head when a co-employee called to her to "watch out."

**2. Customs and Usages; Negligence § 27— warning flag — customs**

In this action for personal injuries sustained by plaintiff when her face struck pipe protruding from defendants' truck as she left her place of employment, the trial court did not err in the admission of testimony concerning the absence of a red flag on the end of defendants' load of pipe and in the admission of testimony concerning the custom of parking trucks at the plant of plaintiff's employer.

**3. Appeal and Error § 45— abandonment of assignments of error**

Assignments of error not discussed in the brief are deemed abandoned.

**4. Damages §§ 3, 13— evidence of medical treatment — failure to show proximate cause**

In this action for personal injuries sustained by plaintiff when her face struck pipe protruding from defendants' truck as she was leaving her place of employment, the trial court erred in the admission of testimony by plaintiff as to medical treatment she received over a year after the complaint in this action was filed, and of expense and loss of time from work by reason of such treatment, where no connection was shown between the accident in question and the necessity for such treatment, and there were no facts in evidence from which a layman of average intelligence would know what caused the necessity for such treatment.

APPEAL by defendants from *Bone, E.J.,* 28 April 1969 Session, NEW HANOVER Superior Court.

Plaintiff brings this action to recover damages for personal injuries allegedly caused by the negligence of defendants.

Plaintiff's evidence tended to show the following: On 16 March 1966 plaintiff was employed by Garver Manufacturing Company in the City of Wilmington, North Carolina. At about 2:45 p.m. of that day plaintiff, along with other employees of Garver, completed her work and was leaving her place of employment to go home. The usual and customary route for employees of Garver from the building to the parking lot was by a door at the back of the building, down a ramp, and into the parking lot. The ramp provided for employees of Garver was for pedestrian traffic only; a ramp for loading and unloading trucks was separately constructed for ingress and egress through a different door at the back of the building.

On 16 March 1966, shortly before 2:45 p.m., defendants' driver was delivering a load of six or eight pieces of ¾ inch galvanized

pipe, twenty-one feet in length. The pipe was a "silverish gray" color and protruded six to eight feet beyond the rear end of defendants' truck. Defendants' driver backed the truck up to the lower end of the pedestrian ramp so that the pipe extended six to eight feet over the ramp at a height of about five and one-half feet above the lower end of the pedestrian ramp. The pipe did not protrude the full width of the ramp. When defendants' driver parked the truck in this position, Mr. Rivenbark, the safety coordinator for Garver Manufacturing Company, told him he had parked at the wrong place; that "he needed to move his truck because his pipe sticking over there was .dangerous with no warning flag on it and someone was liable to get hurt." Without moving the truck, defendants' driver went on into the building to get the receiving clerk to accept delivery.

While defendants' driver was still in the building, plaintiff and several other employees of Garver left the building to go home. The sun was shining brightly and vision was difficult for a few minutes after coming out of the artificially lighted building. Two of plaintiff's co-workers, who were slightly ahead of plaintiff, did not see the protruding pipe until they were beside it. Plaintiff was walking to the right of one of her co-workers, Mrs. Matthews, and when Mrs. Matthews came abreast of the pipe she saw it and called to plaintiff to "watch out." Just as Mrs. Matthews called out, plaintiff looked towards Mrs. Matthews and immediately plaintiff's face struck the protruding pipe. Plaintiff did not see the pipe until after her face struck it. As a result of striking the pipe plaintiff suffered a fracture of her nose and a fracture of her jaw for which she was hospitalized.

Plaintiff's evidence further tended to show loss of time from work, medical expenses, pain and suffering, and some present injury.

Defendants' evidence tended to show the following: On the day in question defendants' driver was delivering to Garver Manufacturing Company three twenty-one foot lengths of black galvanized pipe. Defendants' driver did not back the truck up to the pedestrian ramp; he parked the truck parallel with the loading ramp and none of the pipe was protruding over the pedestrian ramp. No one said anything to him about the way he parked the truck.

From a jury verdict in favor of plaintiff, and judgment entered thereon, defendants appealed.

*Aaron Goldberg and Herbert P. Scott, by Aaron Goldberg, for plaintiff.*

*Poisson & Barnhill, by M. V. Barnhill, Jr., for defendants.*

BROCK, J.

**[1]** Defendants assign as error the refusal of the trial judge to grant defendants' motion for judgment of involuntary nonsuit. Defendants contend that plaintiff's evidence discloses that she was contributorily negligent as a matter of law. We do not agree.

Whether, under the circumstances as disclosed by the evidence, plaintiff, in the exercise of that degree of care which a reasonably prudent person would exercise for his own safety, could or should have seen the pipe was a question for jury determination under proper instructions from the Court. It was likewise for jury determination whether plaintiff exercised due care for her own safety in walking down the pedestrian ramp under the circumstances disclosed by the evidence. And further, it was a question for jury determination whether plaintiff acted as a reasonable and prudent person in momentarily turning her head when Mrs. Matthews called out to her to "watch out." This assignment of error is overruled.

**[2]** Defendants assign as errors (Assignments Nos. 1 and 2) that the trial court admitted testimony concerning the absence of a red flag on the end of defendants' load of pipe, and admitted testimony concerning the custom of parking trucks at the Garver Manufacturing Company plant. These assignments of error are overruled.

**[3]** Defendants' assignment of error No. 3 is not discussed in their brief and is therefore deemed abandoned. Rule 28, Rules of Practice in the Court of Appeals of North Carolina.

By assignment of error No. 7, defendants contend the Court erred in its charge to the jury. Since there must be a new trial we do not deem it necessary to discuss this assignment of error.

**[4]** Defendants assign as error that the trial court allowed plaintiff to testify concerning treatment at Duke University Medical Center in January 1968 without showing connection between the 16 March 1966 accident and the necessity for the treatment received in 1968. This assignment of error has merit.

Plaintiff offered evidence, through her own testimony and that of the doctor, that she was treated immediately after the accident by Dr. Hooper Johnson; that he hospitalized her for a fracture of her nose and a fracture of the middle third of her face. This fracture was demonstrated by observing motion when pressure was applied to her upper teeth; it was treated by securing a wire from the back teeth onto the cheekbone on both the right and left side. The wires were removed on 22 April 1966; the doctor felt that he got good results; and he did not see plaintiff again until 20 January 1969.

Plaintiff further offered evidence, through her own testimony and that of the doctor, that she was examined by Dr. Robert A. Moore in November and December 1966. Dr. Moore detected some swelling and tenderness over the right cheek and the upper jaw, the right maxilla.

Thereafter plaintiff was allowed, over objection, to testify that in December 1967 (approximately a year after her last visit to Dr. Moore) she saw a Dr. Dorman; where and for what is not disclosed. Plaintiff offered no evidence from Dr. Dorman. Also, over objection, plaintiff was allowed to testify that she was operated on at Duke University Medical Center in January 1968 (approximately twenty-two months after the accident, and over a year after the complaint was filed in this action). It is interesting to note that when plaintiff first mentioned Duke University Medical Center in her testimony, it was in reply to a question from her counsel as follows:

"Q.   Did you have some loss subsequent to that?

"A.   Yes, when I went to Duke.

"OBJECTION.

"MR. GOLDBERG:   I am not contending for it."

The only reasonable interpretation of counsel's reply to the objection is that plaintiff was not contending she was entitled to damages by reason of whatever treatment she received at Duke. Nevertheless, plaintiff was allowed to continue with testimony of expense and loss of time from work by reason of her treatment at Duke. Plaintiff was allowed to testify, over objection, that at Duke: "They cut the ends of my jawbone off to relieve some of the pressure." There is not a scintilla of medical evidence to relate the necessity for such an operation to the March 1966 accident. In order for plaintiff to be entitled to recover damages for the hospitalization at Duke University Medical Center, she must show that the damages claimed were the natural and probable result of the negligence complained of. 3 Strong, N.C. Index 2d, Damages, § 2, p. 165. There are no facts in evidence from which a layman of average intelligence would know what caused the necessity for the operation in January 1968, and the jury could only indulge in speculation as to why it was necessary to cut off the ends of plaintiff's jawbones. "Where 'a layman can have no well-founded knowledge and can do no more than indulge in mere speculation (as to the cause of a physical condition), there is no proper foundation for a finding by the trier without expert medical testimony.' " *Gillikin v. Burbage,* 263 N.C. 317, 139 S.E. 2d 753.

The admission of this testimony without proper connection and foundation constituted prejudicial error which entitles defendants to a

New trial.

BRITT and VAUGHN, JJ., concur.