CONSTANCE A. CHAMBERLAIN, Plaintiff-Appellee v. TROY RANDALL THAMES, Defendant-Appellant

No. COA97-943

(Filed 29 December 1998)

### 1. Evidence— hearsay—medical treatment—opinion of non-testifying physician

In an action for damages arising from an automobile accident in which negligence was stipulated, the trial court did not err by admitting the testimony of a treating physician regarding the findings and opinions of a nontestifying treating physician. Although defendant contended that the testifying physician had completed his treatment of plaintiff prior to receiving medical records from the other physician, N.C.G.S. § 8C-1, Rule 703 does not prevent an expert from using the findings and opinions of other experts in forming an opinion of his own. Furthermore, defendant's cross-examination was far broader than the matters brought out on direct examination and he thus waived any objection to the use of the records. Lastly, the trial court gave a limiting instruction.

### 2. Evidence— expert—not formally tendered

The trial court did not err in an action for damages arising from an automobile accident in which negligence was stipulated by admitting testimony from a treating physician who was not formally tendered as an expert. His qualifications were elicited for the record by plaintiff, he was further questioned by defendant on cross-examination about his background, and defendant did not object to the doctor's credentials and waived any objection to the doctor testifying as an expert.

### 3. Evidence— hearsay—nontestifying physician's course of treatment and statements

The trial court did not err in an action for damages arising from an automobile accident by admitting plaintiff's testimony as to a nontestifying physician's course of treatment and statements to her about her condition and its causation. The testimony was both cumulative and corroborative and was not offered to prove the truth of the matters asserted; moreover, even assuming error, it was harmless under the facts of the case.

### 4. Evidence— hearsay—redirect examination—opening door

The trial court did not err in an action for damages arising from an automobile accident by admitting on redirect plaintiff's testimony regarding discussions with a nontestifying treating physician. Defendant opened the door to such inquiry on his cross-examination of plaintiff.

### 5. Evidence— hearsay—medical records

The trial court did not err in an action for damages arising from an automobile accident by admitting medical records where defendant contended that the records were not inherently trust-worthy because they were not made at or near the time of the accident. It is not necessary that notes, records, or memoranda be made at or near the time of the accident, but that they be made at or near the time of the treatment rendered to plaintiff. The records in question here were sent to the trial court by registered mail accompanied by an affidavit which satisfied the requirements of N.C.G.S. § 8C-1, Rule 803(6).

### 6. Evidence— hearsay—medical charges

The trial court did not err in an action for damages arising from an automobile accident by admitting medical bills where plaintiff testified pursuant to N.C.G.S. § 8-58.1 as to the charges at Duke for medical services and a physician testified, by way of corroboration, that he agreed with the diagnosis and opinions of the doctor at Duke and that the treatment was necessary for conditions related to the accident. Moreover, the court gave the jury a limiting instruction stating that the second doctor's testimony was for corroboration.

### 7. Appeal and Error— record—time for filing

Although it determined that defendant had received a fair trial free from prejudicial error, the Court of Appeals noted for the sake of clarity that it no longer adhered to the previous decision in this case, being bound by the earlier decision in *Lockert v. Lockert,* 116 N.C. App. 73.

Judge GREENE dissenting.

Appeal by defendant from judgments dated 5 September 1996 and 9 December 1996, by Judge Ronald L. Stephens in Durham County Superior Court. Heard in the Court of Appeals 1 April 1998. Defendant's appeal was dismissed for violations of the Rules of

Appellate Procedure by opinion filed 21 July 1998. *Chamberlain v. Thames*, 130 N.C. App. 324, 502 S.E.2d 631 (1998). Defendant moved for reconsideration, which was allowed by this Court on 15 August 1998. Heard on reconsideration 17 November 1998.

On 25 December 1991, Troy Randall Thames (defendant) drove his automobile into the truck driven by Constance A. Chamberlain (plaintiff). As a result, plaintiff's truck collided with another vehicle. Following the accident, plaintiff was seen at the Durham County General Hospital emergency room with complaints of neck pain. The emergency room doctor diagnosed cervical strain and released plaintiff to follow up with an orthopedic surgeon. Plaintiff consulted instead with Dr. Walter J. Loehr (Dr. Loehr), a general surgeon working in private practice in Durham, on 31 December 1991.

Dr. Loehr testified that plaintiff, on her first visit, "had a great deal of tenderness and spasm and swelling of the trapezius muscle, the muscle in the posterior part of the neck." He placed her in a cervical collar device to allow the neck muscles to rest and to help alleviate pain and also prescribed a medication which was a muscle relaxant and a mild pain pill. Dr. Loehr saw plaintiff a total of ten times. During each visit plaintiff complained of left shoulder pain, left foot pain, and spasms and pain in the left trapezius area. The left shoulder pain was eventually resolved but Dr. Loehr was not able to relate the left foot pain to the accident. Dr. Loehr referred plaintiff to a rheumatologist.

On 11 December 1992, plaintiff was seen at Duke University Medical Center (Duke) where she had a full examination, including MRIs, x-rays, and blood tests. Plaintiff was subsequently seen at Duke on 11 March 1993 and 10 March 1994. When plaintiff last consulted with Dr. Loehr on 14 April 1993, she stated that she continued to have some intermittent pains and had been seen by a rheumatologist at Duke. Plaintiff told Dr. Loehr that the Duke physician had put her on another type of muscle relaxant as well as an antidepressant medication which can sometimes help spasms. On 14 April 1993, Dr. Loehr formed an opinion that plaintiff had a "chronic, permanent problem" and that she could not return to her former job.

Defendant stipulated negligence and plaintiff brought this action for damages. The jury answered the damages issue in the amount of $68,989.16, and the trial court entered a judgment in that amount together with interest and costs. Defendant moved for a new trial, but this motion was denied on 9 December 1996. Defendant appealed on

8 January 1997, and filed a contract with the court reporter on 17 January 1997 for preparation of a transcript.

On 3 April 1997, the court reporter orally requested an extension of time within which to complete the transcript, and her motion was granted by the trial court on 3 April 1997. The order of the trial court provided that the "time for preparation of the transcript is extended for 30 additional days and the transcript will be due on May 3, 1997." The court reporter completed the transcript within the allotted time and filed a certificate stating that the transcript was served on defendant's attorney by mail on 26 April 1997.

On 2 July 1997, plaintiff moved to dismiss defendant's appeal pursuant to Rule 25(a) of the North Carolina Rules of Appellate Procedure, on the grounds that the time for serving the proposed record on appeal had expired. The motion was denied by the trial court on 14 July 1997. On 22 July 1997, plaintiff cross-assigned error to the denial of its motion to dismiss the appeal.

*Glenn, Mills & Fisher, P.A., by William S. Mills, for plaintiff appellee.*

*Haywood, Denny & Miller, L.L.P., by John R. Kincaid and Thomas H. Moore, for defendant appellant.*

HORTON, Judge.

Defendant contends that the trial court erred in the admission of hearsay evidence by (I) allowing a medical expert to testify about the findings and opinions of a non-testifying medical expert; (II) allowing plaintiff to testify to what she was told by her non-testifying physician; (III) allowing the admission of certain medical bills and records; and (IV) denying his motion for a new trial.

I

At trial, Dr. Loehr testified by videotaped deposition about his course of treatment for plaintiff. He also testified over objection about the findings of Dr. Donna Maneice (Dr. Maneice), a Duke physician who did not testify at trial. Defendant assigns error to the admission of the findings and opinions of Dr. Maneice. The parties stipulated prior to Dr. Loehr's videotaped deposition that "[o]bjections to questions and motions to strike answers need not be made during the taking of this deposition, but may be made for the first time during the progress of the trial of this cause, or at any pretrial hearing held before any judge for the purpose of ruling thereon . . . ."

Pursuant to that stipulation, defendant objected prior to trial to the following excerpts from the testimony of Dr. Loehr:

Q. All right. And did you—were you able to ascertain from the Duke medical records what the diagnosis was from Dr. Donna Maneice at Duke?

A. The diagnosis was fibromyalgia.

Q. All right. And did you review any conclusions that she made about the cause of that fibromyalgia?

A. Her records indicated she felt it was related to the injury she had sustained on December 25, 1991.

MR. LANDAUER: Objection.

Defendant also objected to the following excerpt from the redirect examination of Dr. Loehr:

Q. I want to direct your attention—Mr. Landauer asked you about a letter that was written by Dr. Maneice. I want to direct your attention to a memo or a letter that was written on a Duke University Medical Center all-purpose form by Dr. Maneice, dated December 11, 1992. Have you reviewed that?

A. Yes, I have.

Q. And does she express an opinion regarding the causation of Ms. Chamberlain's problems in that letter?

A. Yes, she does.

Q. And what does she relate them to?

MR. LANDAUER: Objection.

A. She believes that the patient's problems are a result of her initial injury on December 25, 1991.

Q. All right. And does she give a provisional diagnosis in her December 11, 1992, letter?

A. Yes. A provisional diagnosis of fibromyalgia and supraspinatus tendonitis.

Defendant argues that the testimony of Dr. Loehr regarding the findings and opinions of Dr. Maneice were inadmissible hearsay so

prejudicial to defendant's case that he is entitled to a new trial. Defendant agrees that pursuant to Rule 703 of the North Carolina Rules of Evidence, a testifying expert may reasonably rely on the opinion of a non-testifying expert in formulating opinions, but argues that (A) Dr. Loehr had completed his treatment of plaintiff and formulated his opinions before plaintiff was treated by Dr. Maneice and there is no evidence that Dr. Loehr relied on the opinions of Dr. Maneice in his testimony; and (B) that Dr. Loehr was never tendered or qualified as an expert witness. We disagree.

A

[1] Dr. Loehr treated plaintiff from a time shortly after the 25 December 1991 automobile accident until 14 April 1993 when he last saw her. He recommended that plaintiff see a specialist in rheumatology at Duke, and plaintiff saw Dr. Maneice in December 1992. Prior to his deposition testimony being taken, Dr. Loehr had received records from Dr. Maneice which set out her findings and opinions about plaintiff. Those records, which were in Dr. Loehr's file, were marked as "Plaintiff's Exhibit 8" and introduced into evidence at the trial without objection. Dr. Loehr also had medical records in his file from the emergency room at Durham County General Hospital and from a physical therapist who had treated plaintiff. After stating his qualifications, Dr. Loehr was specifically asked if he was "prepared to give . . . an opinion about [plaintiff's] condition based on [his] examination of her *and review of her medical records.*" (Emphasis added.) He replied that he was prepared to do this.

Dr. Loehr also testified that he had reviewed some of the records of plaintiff from Duke. Moreover, when Dr. Loehr was asked whether he talked with plaintiff when he last saw her in April 1993 regarding any permanent disability she might have, he answered that "[b]ased on the symptoms which she still described to me, *the medications that the specialist at Duke had placed her on,* I told her that I felt she was going to have a chronic, permanent problem." (Emphasis added.) This evidence indicates that Dr. Loehr's opinion testimony was based, at least in part, on his review of the findings and opinions of other medical experts, including Dr. Maneice. That is permissible under the provisions of Rule 703.

Defendant's contention that Dr. Loehr had completed his treatment of plaintiff prior to receiving the medical records from Duke, and therefore could not have relied on them in forming his opinion, is unpersuasive. Although Dr. Loehr had completed his active treatment

CHAMBERLAIN v. THAMES

[131 N.C. App. 705 (1998)]

of plaintiff as defendant suggests, he expressed his opinion as to plaintiff's functional capacity in a form he completed when he saw plaintiff for an office visit on 14 April 1993. This form was introduced into evidence without objection as "Plaintiff's Exhibit 2." Further, Dr. Loehr testified in the videotaped deposition and expressed his expert opinion that plaintiff has a "chronic, permanent problem." Rule 703 does not prevent an expert from using the findings and opinions of other experts in forming an opinion of his own.

We further note that on cross-examination of Dr. Loehr, defendant questioned him extensively about matters contained in the Duke medical records. Defendant's cross-examination was far broader than the matters brought out by plaintiff on Dr. Loehr's direct examination, and thus he waived any objection to the use of the Duke records by Dr. Loehr in his testimony. *State v. Adams*, 331 N.C. 317, 328, 416 S.E.2d 380, 386 (1992).

Lastly, the trial court gave a limiting instruction to the jury following Dr. Loehr's videotaped testimony stating that his "testimony was allowed into evidence for a limited purpose of corroborating information contained in the Duke medical records. You are instructed that you are to consider the testimony regarding Dr. Maneice's opinions only to the extent that you find that the testimony corroborates the information contained in the Duke medical records." Therefore, even if error had occurred, it was cured.

B

[2] Defendant also complains that Dr. Loehr was not tendered or qualified as an expert. Although Dr. Loehr was not formally tendered as an expert, we note that his qualifications were elicited for the record by plaintiff and he was further questioned by defendant on cross-examination about his background. This evidence tends to show that Dr. Loehr is an orthopedic surgeon, graduated from medical school, and completed an internship and residency program in surgery. He has been a general surgeon in North Carolina since 1972 and has clinical surgery appointments at both Duke University and the University of North Carolina.

Defendant did not object to Dr. Loehr's credentials either at the time of the deposition or at the pretrial hearing where defendant objected to several portions of the deposition on hearsay grounds. He did not object at that time, however, that the doctor was unqualified to express opinions. Defendant has waived any objection to Dr.

Loehr's testifying as an expert, and this assignment of error is overruled. *See State v. Westall,* 116 N.C. App. 534, 542-43, 449 S.E.2d 24, 29, *disc. review denied,* 338 N.C. 671, 453 S.E.2d 185 (1994).

II

**[3]** Defendant next assigns error to the trial court allowing plaintiff to testify to Dr. Maneice's course of treatment and to what Dr. Maneice told her (plaintiff) about her condition and its causation. Defendant specifically objects to the following testimony by plaintiff on direct examination:

Q. All right. Did you receive treatment from the physicians at Duke?

A. Yes.

Q. And why were you going to Duke?

A. Well, my swelling and the pain in my back and neck was back and forth. Coming back and forth so much and the tenderness in my muscles, so, that's what I went there for. They told me they did the MRI—

MR. KINCAID: Objection.

THE WITNESS: Because I had a knot on the side the day I went to get the MRI.

THE COURT: Overruled. Go ahead.

THE WITNESS: That's the reason I thought I was having the MRI. That's what they explained to me.

Q. Did Dr. Maneice ever make a diagnosis of your medical condition?

MR. KINCAID: Objection.

THE COURT: Overruled.                    ˙

THE WITNESS: She told me that I had fibromyalgia and explained what that was.

MR. KINCAID: Objection, motion to strike.

THE COURT: Motion denied. Go ahead.

BY MR. MILLS:

Q. Just tell us what you understand fibromyalgia to be?

MR. KINCAID: Objection.

THE COURT: Overruled.

THE WITNESS: It is a—it has got to do with the fibers and ten-
dons of your muscles and it is like arthritis in
your muscles.

Prior to the above testimony by plaintiff, the jury had heard the
testimony of Dr. Loehr by means of his videotaped deposition. During
that testimony, Dr. Loehr was allowed to testify about the diagnosis
made by Dr. Maneice and stated that he agreed with the diagnosis.
Further, the Duke records relied upon by Dr. Loehr were admitted
into evidence as an exhibit. Those records contained information as
to the MRI performed on plaintiff at Duke and the diagnosis of Dr.
Maneice. Thus, plaintiff's testimony is both cumulative and corrobo-
rative and was not offered to prove the truth of the matters asserted.
*See State v. Robertson*, 115 N.C. App. 249, 258, 444 S.E.2d 643, 648
(1994) (evidence which cannot be admitted for substantive purposes
may be admitted for corroborative purposes). Finally, even assuming
there was error in the admission of the testimony, it was harmless
under the facts of this case. *See, e.g., Guyther v. Nationwide Mut.
Fire Ins. Co.*, 109 N.C. App. 506, 428 S.E.2d 238 (1993) (harmless
error occurs when inadmissible evidence is admitted if same or simi-
lar evidence was properly admitted elsewhere).

[4] Defendant also complains that the following testimony of plain-
tiff on redirect examination was hearsay and should have been
excluded:

Q. During the period that you were seen at Duke, Mr. Kincaid
talked with you about your discussions with Dr. Maneice. Did
Dr. Maneice tell you what she believed to be the reason for
your fibromyalgia?

MR. KINCAID: Objection.

THE COURT: Overruled.

THE WITNESS: She told me that it was correct. I had some kind
of trauma.

BY MR. MILLS:

Q. Okay. And did she go in and describe for you what fibromyal-
gia is?

CHAMBERLAIN v. THAMES

[131 N.C. App. 705 (1998)]

A. She told me that it was the tissue in my muscles and tendons that was causing the swelling and pain.

Q. Did she talk with you about anything about the relationship between having such an injury and depression?

A. Yes.

Q. And what do you remember about that?

MR. KINCAID: Objection.

THE COURT: Overruled.

THE WITNESS: It was, well, I was upset because I was unable to go back to work. And she said, Well, that was normal to be upset about that. And she asked me questions about, you know, what my thoughts were during the day, what I did all day and on like that. You know, she was the first one that told me that I was depressed.

* * * *

BY MR. MILLS:

Q. Mr. Kincaid read one of the letters that Dr. Maneice wrote you. Did she write something on your behalf on December 11th, 1992?

A. Yes.

Q. And would you just read that to the ladies and gentlemen of the jury.

A. It says, "To whom it may concern, Miss C. Chamberlain was seen by me today in care of the Duke Arthritis Center. We are in the process of investigating her neck pain further. One personal diagnosis"—I can't really read her writing. It says "fibromyalgia, which is a result of her initial injury on 12/25/91, sporadic tendonitis left shoulder. At this time she is advised by me not to do any heaving [sic] lifting to avoid further aggravating her symptoms. Donna Maneice."

Q. And after writing that letter and after doing all of her tests, did she ever indicate to you that she had changed her mind about the cause of your condition?

A. No.

MR. KINCAID: Objection.

THE COURT: Overruled.

Although defendant complains about the admission of the testimony, defendant opened the door to such inquiry on his cross-examination of plaintiff. On cross-examination, plaintiff was thoroughly questioned about aspects of her treatment at Duke which were not the subject of her direct examination. The cross-examination was focused in part on attempting to show that plaintiff's ongoing problems might be the result of depression and spousal abuse. On redirect examination, it was proper for plaintiff to respond to that line of questioning by stating what she had been told by her doctor at Duke about the relationship between her condition and depression. Further, plaintiff was asked on cross-examination to read a letter sent to her from Dr. Maneice. Having done so, defendant may not now complain that plaintiff read another letter from Dr. Maneice to her on redirect examination.

Defendant's reliance on our decision in *Graves v. Harrington*, 6 N.C. App. 717, 171 S.E.2d 218 (1969), is misplaced. The plaintiff in *Graves* testified over objection that her doctors had "cut the ends of [her] jawbone off to relieve some of the pressure." *Id.* at 721, 171 S.E.2d at 221. In that case, this Court stated there was not "a scintilla of medical evidence to relate the necessity for such an operation to the March 1966 accident," *id.*, and held that it was prejudicial error to allow the testimony without "proper connection and foundation." *Id.* at 722, 171 S.E.2d at 221. In the case *sub judice*, however, Dr. Loehr testified that plaintiff's treatment at Duke by Dr. Maneice was related to the automobile accident caused by defendant, and that such treatment was reasonable and necessary in his opinion. That evidence supplies the "connection and foundation" not present in *Graves*. This assignment of error is overruled.

### III

Defendant next argues that admission of the Duke medical records and bills was reversible error because there was no expert medical evidence establishing the necessary connection between the automobile accident in question and the conditions for which she was subsequently treated at Duke. Specifically, defendant contends that the medical records from Duke, which were marked as an exhibit and introduced into evidence over objection of defendant, were not inherently "trustworthy" within the meaning of Rule 803(6) because they

were not made at or near the time of the automobile accident involved herein. We disagree.

## A

## Medical Records

[5] Rule 803(6) states that "[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge . . . ." is an exception to the hearsay rule. N.C. Gen. Stat. § 8C-1, Rule 803(6) (1992). It is not necessary that the notes, records or memoranda be made at or near the time of the accident, but that they be made at or near the time of the treatment rendered to plaintiff. A contrary result would vitiate much of Rule 803(6), because only those medical records rendered near the time of the accident, such as ambulance, emergency room, x-rays, and so forth, would be admissible and records resulting from necessary and pertinent subsequent or follow-up treatment would be excluded. Indeed, our Supreme Court has stated that a custodian of records must testify that the " 'entries were made at or near to the time of the act, condition or event recorded . . . .' " *Donavant v. Hudspeth*, 318 N.C. 1, 6, 347 S.E.2d 797, 801 (1986) (quoting *Sims v. Insurance Co.*, 257 N.C. 32, 35, 125 S.E.2d 326, 329 (1962)).

Furthermore, Rule 803(6) itself states that items which may be the subject of such records include "acts, events, conditions, opinions, or diagnoses . . . ." N.C. Gen. Stat. § 8C-1, Rule 803(6). The records in question were sent to the trial court by registered mail pursuant to Rule 45(c) of the North Carolina Rules of Civil Procedure. The affidavit of Barbara E. Woolley, MBA, RRA, Director of Medical Record Services, which accompanied the records, reads as follows:

Barbara E. Woolley, being first duly sworn, deposes and says:

1. That your affiant is the Director of Medical Record Services, Duke University Medical Center, Durham, North Carolina.

2. That on 3rd day of March, 1995, your affiant received a subpoena to produce medical records, captioned Constance Chamberlain W03 341.

3. That in lieu of a personal appearance to produce the medical records, your affiant will send the medical records by registered mail.

4. That your affiant certifies that the attached medical records are the ones so requested in the subpoena and are authentic copies.

5. That your affiant certifies that the attached medical records are true and correct copies, made in regular course of business at or near the time of the acts, conditions or events recorded.

6. That your affiant certifies to the best of [her] knowledge that the medical records were made by persons having knowledge of the information set forth.

This affidavit satisfied the requirements of Rule 803(6).

B

Medical Charges

[6] N.C. Gen. Stat. § 8-58.1 (1986) states that, when an issue of medical or hospital charges arises, the injured party "is competent to given evidence regarding the amount of such charges, provided that records or copies of such charges accompany such testimony. The testimony of such a person establishes a rebuttable presumption of the reasonableness of the amount of the charges." Therefore, in order to collect damages for medical bills, the treatment for which charges are incurred must be reasonably necessary, and the charges must be reasonable in amount. *Jacobsen v. McMillan*, 124 N.C. App. 128, 134-35, 476 S.E.2d 368, 371-72 (1996). In this case, plaintiff testified pursuant to § 8-58.1 as to the charges at Duke for medical services and Dr. Loehr testified, by way of corroboration, that he agreed with the diagnoses and opinions of Dr. Maneice in that the treatment was necessary for conditions related to the accident. Moreover, as discussed earlier, the trial court gave the jury a limiting instruction stating that Dr. Loehr's testimony was for corroboration. The limiting instruction was repeated in the charge to the jury. This assignment of error, therefore, is also overruled.

IV

Finally, defendant contends that the trial court erred in denying his motion for a new trial. We disagree. A motion for a new trial is within the discretion of the trial court and will not be reversed absent an abuse of discretion. *Fenz v. Davis*, 128 N.C. App. 621, 624, 495 S.E.2d 748, 751 (1998). There has been no showing of an abuse of discretion by the trial court in this case.

**[7]** Because we have concluded that defendant received a fair trial, free from prejudicial error, we need not reach the cross-assignment of error by plaintiff that the trial court erred in failing to dismiss the appeal of defendant for failure to file the record in apt time. We must note, however, for the sake of clarity, that we no longer adhere to our previous decision in this case, reported at 130 N.C. App. 324 502 S.E.2d 631 (1998). Although we continue to believe that our prior decision in this case was a proper interpretation and application of Rule 7 of the Rules of Appellate Procedure, we are bound by the earlier decision of this Court in *Lockert v. Lockert*, 116 N.C. App. 73, 446 S.E.2d 606 (1994). *See In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989) (one Court of Appeals panel may not overrule another).

No error.

Judge LEWIS concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I do not believe we should reach the merits of this case, because defendant failed to follow the North Carolina Rules of Appellate Procedure (Rules). *See Wiseman v. Wiseman*, 68 N.C. App. 252, 255, 314 S.E.2d 566, 567-68 (1984) ("The Rules of Appellate Procedure are mandatory and failure to follow the [R]ules subjects an appeal to dismissal."). Accordingly, I would dismiss defendant's appeal.

In a civil case, an appellant must contract in writing with the court reporter for production of the portions of the transcript which are necessary for appellate review within ten days after filing notice of appeal. N.C.R. App. P. 7(a)(1).[1] The appellant is required "to file a copy of the contract with the clerk of the trial tribunal." *Id.*[2] The

---

1. I note that Rule 7 now provides that the appellant must "arrange for the transcription" within fourteen days after filing notice of appeal. N.C.R. App. P. 7(a)(1). This appeal was taken, however, prior to the May 1998 changes to the Rules; I therefore review defendant's compliance with the Rules as they existed at the time his appeal was taken.

2. Rule 7 currently provides that the "appellant shall file the written documentation of [the] transcript arrangement with the clerk of the trial tribunal, and serve a copy of it upon all other parties of record, and upon the person designated to prepare the transcript." N.C.R. App. P. 7(a)(1).

CHAMBERLAIN v. THAMES

[131 N.C. App. 705 (1998)]

court reporter must then produce and deliver the transcript within sixty days. N.C.R. App. P. 7(b)(1).[3] The trial court may, "in its discretion, and for good cause shown by the reporter or by a party on behalf of the reporter," extend the time to produce the transcript for an additional thirty days. *Id.*[4] Any additional motion for an extension of time to produce the transcript "may only be made to the appellate court to which appeal has been taken." *Id.*[5] Noncompliance with the sixty-day deadline of Rule 7, where no good cause is shown for the appellant's failure to request an extension, provides a basis for dismissal of the appeal. *Anuforo v. Dennie*, 119 N.C. App. 359, 363, 458 S.E.2d 523, 526 (1995); *see also* N.C.R. App. P. 25(a) (motion to dismiss "*shall be allowed* unless compliance [with the time limits contained in the Rules] or a waiver thereof is shown on the record, or ·unless the appellee shall consent to action out of time, or unless the court for good cause shall permit the action to be taken out of time" (emphasis added)).[6]

In this case, notice of appeal was timely filed by defendant on 8 January 1997. The contract for the transcript was dated 17 January 1997 and therefore was entered within the ten-day period provided by Rule 7. It follows that the transcript in this case was initially due by 18 March 1997 (sixty days from the date of the contract). The transcript was not delivered by 18 March 1997, but instead was delivered on 26 April 1997 (thirty-nine days beyond the time frame allowed in Rule 7). Accordingly, plaintiff's motion to dismiss defendant's appeal should have been granted by the trial court. *See* N.C.R. App. P. 25(a).

Although I agree with the majority that we are bound by published decisions of this Court, *see In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989), I disagree that dismissal of this case would overrule our decision in *Lockert v. Lockert*, 116 N.C. App. 73, 446 S.E.2d 606, *disc. review allowed and supersedeas allowed*, 338 N.C. 311, 450 S.E.2d 490 (1994). In *Lockert,* we stated:

---

3. The current version of Rule 7 continues to require production and delivery of the transcript by the court reporter within sixty days. N.C.R. App. P. 7(b)(1).

4. Rule 7 now provides that "[t]he trial tribunal, in its discretion, and for good cause shown *by the appellant* may extend the time to produce the transcript for an additional 30 days." N.C.R. App. P. 7(b)(1) (emphasis added). Rule 7 no longer specifically allows the court reporter to move for an extension. *Id.*

5. This provision remains substantially unchanged. N.C.R. App. P. 7(b)(1).

6. Rule 25 was not affected by the May 1998 amendments to the Rules.

CHAMBERLAIN v. THAMES

[131 N.C. App. 705 (1998)]

[I]f the court reporter fails to certify that the transcript has been delivered within the sixty-day period·permitted by Appellate Rule 7(b), the thirty-five day period within which an appellant must serve the proposed record on appeal does not begin to run until the court reporter does certify delivery of the transcript. To hold otherwise would allow a delay by a court reporter, whether with or without good excuse, to determine the rights of litigants to appellate review.

*Lockert*, 116 N.C. App. at 81, 446 S.E.2d at 610. This Court has since construed *Lockert* as holding that the "literal meaning of [a] rule of appellate procedure should not be followed where delay by [the] court reporter would deprive [a] litigant of appellate review." *Anuforo*, 119 N.C. App. at 363, 458 S.E.2d at 526. In *Anuforo*, this Court also stated that "noncompliance with the 60-day deadline under Rule 7 may appropriately provide the basis for dismissal of an appeal." *Id.* at 363, 458 S.E.2d at 526. I believe that we are bound by *Anuforo* and its interpretation of *Lockert*. *See Civil Penalty*, 324 N.C. at 384, 379 S.E.2d at 36.

In dismissing this case due to defendant's noncompliance with Rule 7's sixty-day deadline, we would not be allowing the court reporter to deprive defendant of appellate review. Defendant should have moved the trial court for an extension of time when it became apparent that additional time was needed, *see* N.C.R. App. P. 7(b)(1), and, if necessary, should have requested additional extensions from this Court, *see* N.C.R. App. P. 27(c). Accordingly, it follows that the court reporter's actions have not deprived defendant of his right to appellate review; rather, defendant's own failure to supervise the process of his appeal has deprived him of this right and requires that this appeal be dismissed for violation of Rule 7(b)(1).[7]

---

7. I acknowledge that the trial court did grant an extension of time to deliver the transcript (through 3 May 1997), pursuant to a request made by the court reporter, and the transcript was delivered within that extension (on 26 April 1997). It appears from the record, however, that this request was not timely made. In any event, that extension is not helpful to defendant because it exceeded the authority vested in the trial court to grant extensions. A trial court is only permitted to extend the time for delivery of the transcript thirty days beyond the time initially required by Rule 7(b)(1). In this case, the transcript was initially due on 18 March 1997 (sixty days after 17·January 1997) and the trial court only had authority under Rule 7 to extend that date to 17 April 1997 (thirty days past 18 March 1997). Defendant may not rely on Rule 27(c) as a basis for the trial court's extension, because Rule 27(c) expressly gives only the appellate courts the authority to grant additional extensions of time for transcript delivery. N.C.R. App. P. 27(c).