IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-378

Filed: 21 January 2020

Alamance County, No. 14 CVS 418

DEBBIE THOMPSON HAMPTON; as Executrix of the Estate of Delacy Beatrice Thompson Miles, Deceased,

v.

ANDREW TAYLOR HEARN, M.D., Defendant.

Appeal by plaintiff from judgment entered 25 April 2018 by Judge A. Graham Shirley, II in Alamance County Superior Court. Heard in the Court of Appeals 29 October 2019.

> *Wake Forest University School of Law Appellate Clinic, by John J. Korzen, for plaintiff-appellant.*

> *Nelson Mullins Riley & Scarborough LLP, by G. Gray Wilson, Linda L. Helms, and Lorin J. Lapidus, for defendant-appellee.*

BERGER, Judge.

Debbie Thompson Hampton ("Plaintiff), as Executrix of the Estate of Delacy Beatrice Thompson Miles ("Ms. Miles"), appeals from a judgment entered after a jury returned a verdict finding Dr. Andrew Taylor Hearn ("Dr. Hearn") not liable for negligence. Plaintiff contends the trial court erroneously instructed the jury on intervening negligence and erroneously admitted expert witness testimony. We disagree and find no error.

Factual and Procedural Background

On March 8, 2011, Ms. Miles was treated by Dr. Hearn at Alamance Regional Medical Center for angioplasty and stent placement in her innominate vein related to her dialysis treatments. Angioplasty is "the dilatation [*sic*] of a vessel." The innominate vein runs from the collarbone across the chest and then "enters the superior vena cava, which is the main blood vessel entering the heart on the right side." Dr. Hearn inserted the stent to unblock the vein, which was likely blocked from previous catheter placements in dialysis treatments.

Dr. Hearn first performed the angioplasty, or "balloon" insertion, to expand the vein. He then implanted a stent. The stent was about 60 millimeters, or about 2.5 inches, in length. The manufacturers put metallic markers on the ends of the stents so its location can be easily identified radiologically. In Ms. Miles' case, the stent was to be placed at the junction of the left innominate vein and the superior vena cava.

Three days later, on March 11, 2011, Ms. Miles needed a "permacath placement" in her right internal jugular vein to establish new access for her ongoing dialysis. In order to establish access, Dr. Gregory Schnier ("Dr. Schnier"), passed a catheter from the right jugular vein through the superior vena cava to the right atrium of the heart. No evidence tended to show Dr. Schnier knew or had been informed that the stent Dr. Hearn placed on March 8 was obstructing the superior vena cava.

During the procedure, Ms. Miles experienced ventricular tachycardia. Providers at Alamance Regional Medical Center placed Ms. Miles on medication for the arrhythmia, and discovered there was a "foreign body" in the right ventricle. Ms. Miles was transferred to Duke Hospital on March 12, 2011, and the foreign stent was removed on March 14, 2011. The Duke pathology report revealed that "a foreign body" was found in the right ventricle. The foreign body was determined to be a 30 millimeter "self-expanding stent which had a fracture on one portion of it." It was part of the stent that Dr. Hearn had placed in Ms. Miles.

Ms. Miles remained in the hospital from March 14, 2011 until March 23, 2011. She returned to Duke from March 29 to April 3, 2011 due to bleeding from the dialysis site. After her release from Duke Hospital, Ms. Miles entered a nursing home in Georgia. Ms. Miles subsequently died from other causes.

Plaintiff filed a complaint against Hearn Vascular Surgery, P.A.; Alamance Regional Medical Center, Inc.; Dr. Hearn; and Dr. Schnier. Plaintiff alleged her complaint was "an action for medical negligence resulting in severe and permanent disabling injuries to [Ms. Miles] as a result of injuries sustained when a stent improperly placed in [Ms. Miles'] vein for better dialysis access, was broken during a subsequent procedure and went into [Ms. Miles'] heart causing severe, permanent and disabling injuries." At trial, before the opening statements, Plaintiff took a

voluntary dismissal without prejudice against Dr. Schnier, leaving Dr. Hearn as the sole defendant in the suit.

During trial, Plaintiff's expert witness regarding the standard of care, Dr. Michael Dahn ("Dr. Dahn"), testified Defendant had placed the stent "too far into the superior vena cava." He acknowledged that it was acceptable medical practice for a vascular stent to extend into the superior vena cava, but he testified that extending "beyond one to two millimeters" is problematic. He further opined that Dr. Hearn's final positioning of the stent "set the stage for it . . . being sheared in half causing it to migrate." Dr. Dahn concluded that Dr. Hearn's placement of the stent breached the applicable standard of care. Dr. Dahn also testified that Dr. Schnier's failure to recognize the position of the stent when he performed his procedure breached the standard of care.

Two expert witnesses retained by Dr. Hearn, Dr. Steve Powell ("Dr. Powell") and Dr. Ray Workman ("Dr. Workman"), testified that Dr. Hearn had complied with the standard of care when he performed the angioplasty and stent placement procedures. Dr. Hearn also presented deposition testimony by Dr. Jack Dawson and Dr. Michel Rinaldi ("Dr. Rinaldi"). Dr. Rinaldi was specifically retained to testify as an expert witness on causation.

During the charge conference, the trial court informed the parties of the proposed jury instructions, which included Dr. Hearn's requested instruction on

intervening negligence. Plaintiff's objection to the instruction on intervening negligence was overruled. The intervening negligence instruction stated in pertinent part:

> In this case, the defendant, Dr. Hearn, contends that, it [*sic*] he was negligent, which he denies, such negligence was not a proximate cause of the Plaintiff's injury because it was insulated by the negligence of Dr. Gregory S[c]hnier. You will consider this matter only if you find that Dr. Hearn was negligent. If you do so find, Dr. Hearn's negligence would be insulated and Dr. Hearn would not be liable to the Plaintiff, if the negligence of Dr. S[c]hnier, was such to have broken the causal connection or sequence between Dr. Hearn's negligence and the Plaintiff's injury; thereby excluding Dr. Hearn's negligence as a proximate cause.

After deliberation, the jury determined that Dr. Hearn was not negligent. Plaintiff appeals, contending the trial court erred by instructing the jury on intervening negligence, and that the jury likely would have reached a different result but for the instruction. She further contends the trial court erred by allowing one of Dr. Hearn's expert witnesses on causation to opine on standard of care. We disagree and find no error.

## Analysis

### I. Jury Instructions on Intervening Negligence

Plaintiff first contends the trial court erred when it instructed the jury on intervening negligence because that instruction was not supported by the evidence. Plaintiff's main argument asserts an instruction on intervening negligence should

not have been given because no expert witness directly established the standard of care Dr. Schnier owed; that he breached that standard of care; and that his breach of the standard of care was the proximate cause of Ms. Miles' injury. As a result, she argues insufficient evidence that Dr. Schnier's negligence insulated Dr. Hearn's negligence, thereby rendering an instruction on intervening negligence erroneous.

We conclude direct expert testimony establishing those elements against Dr. Schnier was not required for an instruction on intervening negligence to be given.

> When charging a jury in a civil case, the trial court has the duty to explain the law and apply it to the evidence on the substantial issues of the action. The trial court is permitted to instruct a jury on a claim or defense only if the evidence, when viewed in the light most favorable to the proponent, supports a reasonable inference of such claim or defense.

*Estate of Hendrickson ex rel. Hendrickson v. Genesis Health Venture, Inc.*, 151 N.C. App. 139, 151-52, 565 S.E.2d 254, 262 (2002) (citations and quotation marks omitted). "This Court is required to consider and review jury instructions in their entirety. Under the applicable standard of review, the appealing party must show not only that error occurred in the jury instructions but also that such error was likely, in light of the entire charge, to mislead the jury." *Id.* at 150-51, 565 S.E.2d at 262 (citation omitted).

"A plaintiff asserting medical negligence must offer evidence that establishes the following essential elements: (1) the applicable standard of care; (2) a breach of such standard of care by the defendant; (3) the injuries suffered by the plaintiff were

proximately caused by such breach; and (4) the damages resulting to the plaintiff."

*Hawkins v. Emergency Med. Physicians of Craven Cnty.*, PLLC, 240 N.C. App. 337,

341, 770 S.E.2d 159, 162 (2015) (internal citations and quotation marks omitted).

Proximate cause is defined as:

> a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.

*Id.* at 341-42, 770 S.E.2d at 162-63 (citation and quotation marks omitted).

> Proximate cause is an inference of fact, to be drawn from other facts and circumstances. If the evidence be so slight as not reasonably to warrant the inference, the court will not leave the matter to the speculation of the jury.
> It is only when the facts are all admitted and only one inference may be drawn from them that the court will declare whether an act was the proximate cause of an injury or not. But that is rarely the case. Hence, "what is the proximate cause of an injury is ordinarily a question for the jury. . . . It is to be determined as a fact, in view of the circumstances of fact attending it."

*Conley v. Pearce-Young-Angel Co.*, 224 N.C. 211, 214, 29 S.E.2d 740, 742 (1944)

(citation omitted).

Proximate cause is "an established element of negligence, the burden rests

upon a plaintiff to prove 'by the greater weight of the evidence' that a defendant's

conduct was the proximate cause of the injuries alleged in an action for negligence."

*Clarke v. Mikhail*, 243 N.C. App. 677, 686, 779 S.E.2d 150, 158 (2015) (citation

omitted). "The doctrine of insulating negligence is an elaboration of a phase of proximate cause." *Id.* at 686, 779 S.E.2d at 158 (*purgandum*). "The burden of proof does not shift to the defendant when an instruction on superseding negligence is requested. Superseding or insulating negligence is an extension of a plaintiff's burden of proof on proximate cause." *Id.* at 686, 779 S.E.2d at 158.

Although "intervening negligence" is also referred to as "superseding or insulating negligence" in our case law, *Barber v. Constien*, 130 N.C. App. 380, 383, 502 S.E.2d 912, 914 (1998), "negligence" in any of those three names originates from "cause." In *Harton v. Tel. Co.*, 141 N.C. 455, 54 S.E. 299 (1906), our Supreme Court explained the concept of intervening cause as follows:

> An efficient intervening *cause* is a new proximate cause which breaks the connection with the original cause and becomes itself solely responsible for the result in question. It must be an independent force, entirely superseding the original action and rendering its effect in the causation remote. It is immaterial how many new elements or forces have been introduced, if the original cause remains active, the liability for its result is not shifted. . . . If, however, the intervening responsible cause be of such a nature that it would be unreasonable to expect a prudent man to anticipate its happening, he will not be responsible for damage resulting solely from the intervention. The intervening *cause may be culpable, intentional, or merely negligent*.

141 N.C. at 462-63, 54 S.E. at 301-02 (citation omitted) (emphasis added); *Balcum v. Johnson*, 177 N.C. 213, 216, 98 S.E. 532, 534 (1919) (noting that the new independent cause "must be in itself negligent *or at least culpable*" (emphasis added)).

- 8 -

In order to warrant an instruction on intervening negligence, there needs to be evidence tending to show an intervening cause, whether culpable, intentional, or negligent, broke the connection of the original wrongdoer and that the original wrongdoer had no reasonable ground to anticipate it.

In a medical malpractice case, a *prima facie* evidentiary showing of the standard of care, breach of the standard of care, proximate causation, and damages is required. *Clark v. Perry*, 114 N.C. App. 297, 305, 442 S.E.2d 57, 61 (1994); *Purvis v. Moses H. Cone Mem'l Hosp. Serv. Corp.*, 175 N.C. App. 474, 477, 624 S.E.2d 380, 383 (2006); *Hawkins*, 240 N.C. App. at 341, 770 S.E.2d at 162. However, intervening negligence is an *extension* of proximate cause. Plaintiff points to no case that states a *separate and heightened* evidentiary showing is required regarding an alleged insulating cause. Instead, our case law demonstrates that if the evidence at trial, whether plaintiff's own evidence or other evidence, reveals that a cause may have been a sufficient intervening cause of the injuries alleged, an instruction on intervening negligence is proper. As long as the intervening cause is "an independent force, entirely superseding the original action and rendering its effect in the causation remote," an instruction may be warranted.

In *Clarke v. Mikhail*, the plaintiff filed a wrongful death and medical malpractice action against Dr. Mikhail, Ms. Hardin, and Coastal Carolina Neuropsychiatric Center on behalf of Ms. Bohn. 243 N.C. App. at 678-79, 779 S.E.2d

at 153.  Ms. Bohn was first seen by Dr. Mikhail, who diagnosed her with paranoid schizophrenia and generalized anxiety disorder.  *Id.* at 679, 779 S.E.2d at 154.  Ms. Hardin, under Dr. Mikhail's supervision was responsible for Ms. Bohn's direct treatment thereafter.  *Id.* at 679, 779 S.E.2d at 154.  In April 2010, Ms. Hardin prescribed Lithium, a mood stabilizer for her depression and anxiety, to Ms. Bohn. *Id.* at 680, 779 S.E.2d at 154.  In a subsequent appointment, Ms. Hardin prescribed Lamictal, which had a warning stating the drug carries the risk of a severe rash, to Ms. Bohn.  *Id.* at 680-81, 779 S.E.2d at 154-55.  Ms. Bohn continued to see Ms. Hardin until June 2010.  *Id.* at 681, 779 S.E.2d at 155.

In June 2010, Ms. Bohn went to Onslow Urgent Care with a sore throat, yeast infection, blisters on her lips, and a rash.  *Id.* at 681, 779 S.E.2d at 155.  Onslow Urgent Care did not advise Ms. Bohn to stop taking Lamictal and diagnosed her with herpes simplex 2, bacterial conjunctivitis, leukoplakia of her oral mucous membrane, yeast infection, and canker sores.  *Id.* at 682, 779 S.E.2d at 155.  Two days later, she was transported to the hospital from her home and treated for the rash she had developed.  *Id.* at 682, 779 S.E.2d at 155.  Ms. Bohn eventually passed away two months later of ventilator-acquired pneumonia.  *Id.* at 682, 779 S.E.2d at 156.

In her complaint, the plaintiff "alleged Ms. Hardin was negligent in prescribing and dosing a drug, Lamictal, to treat [Ms. Bohn's] severe mental illness."  *Id.* at 679, 779 S.E.2d at 153.  At trial, defendants presented two experts whom both "opined

Lamictal was an appropriate medication for Ms. Bohn's condition." *Id.* at 683, 779 S.E.2d at 156. The defendants also presented two causation experts who testified that "in their expert opinion, if Ms. Bohn had been properly diagnosed on the date she sought care at Onslow Urgent Care and had discontinued the Lamictal, more likely than not the rash would have resolved and she would have survived." *Id.* at 683, 779 S.E.2d at 156. The trial court instructed the jury on intervening negligence and stated it should consider Onslow Urgent Care's negligence as superseding and intervening. *Id.* at 685, 779 S.E.2d at 157-58. The jury returned a verdict in favor of the defendants. *Id.* at 685, 779 S.E.2d at 157-58.

On appeal, the plaintiff argued, among other things, the trial court erred by "submitting the issue of superseding and intervening negligence to the jury" and "submitting a jury instruction on superseding and intervening negligence, which was unsupported by the evidence and misstated the law." *Id.* at 684, 779 S.E.2d at 157. This Court, concluded:

> The trial court's instruction to the jury did not require Plaintiff to *disprove* superseding or intervening negligence by Onslow Urgent Care. The trial court's jury instruction properly informed the jury of the following: (1) Plaintiff carries the burden "to prove by the greater weight of the evidence" that Defendants' negligence was a proximate cause of Ms. Bohn's injury and death; (2) Defendants did *not* carry the burden of proving their negligence, if any, was insulated by Onslow Urgent Care's negligence; and, (3) the issue of superseding negligence was to be addressed only if the jury first found Defendants were negligent in the course of Ms. Bohn's medical treatment.

*Id.* at 687, 779 S.E.2d at 159.

This Court did not state an expert witness was required to establish a separate and heightened evidentiary showing of Onslow Urgent Care's standard of care, that it had breached its standard of care, or that its breach was the proximate cause of Ms. Bohn's injuries. The trial court relied on the evidence presented at trial in determining whether an instruction on intervening negligence was proper. Based on the evidence, this Court determined that the defendants' conduct and Onslow Urgent Care's conduct could be the proximate causes of Ms. Bohn's injuries. This Court emphasized: "The burden of proof remained with Plaintiff to prove Defendants' negligence, if any, was a proximate cause of Ms. Bohn's injury and death. The trial court's jury instruction did not improperly shift the burden of proof or misstate the law." *Id.* at 688, 779 S.E.2d at 159.

Thus, it follows to reason that, even if a third-party is not a party at trial, an instruction on intervening negligence may be given if the evidence at trial shows that the third-party's conduct was a sufficient "intervening *cause*." *Id.* at 688, 779 S.E.2d at 159; *see Barber*, 130 N.C. App. at 382, 502 S.E.2d at 914. Therefore, Plaintiff's contention that an expert witness was required to first establish Dr. Schnier's standard of care and whether he breached that standard of care in order to warrant an instruction on intervening negligence is without merit.

Our task on appeal is to determine whether sufficient evidence was presented for the jury to decide whether any negligence on Dr. Hearn's part was insulated by a superseding cause.

> The test by which the negligent conduct of one is to be insulated as a matter of law by the independent negligent act of another, is reasonable unforeseeability on the part of the original actor of the subsequent intervening act and resultant injury. Put another way, in order for the conduct of the intervening agent to break the sequence of events and stay the operative force of the negligence of the original wrongdoer, the intervening conduct must be of such nature and kind that the original wrongdoer had no reasonable ground to anticipate it.

*Adams v. Mills*, 312 N.C. 181, 194, 322 S.E.2d 164, 173 (1984) (citation omitted).

However,

> the law of proximate cause does not always support the generalization that the misconduct of others is unforeseeable. The intervention of wrongful conduct of others may be the very risk that defendant's conduct creates. In the absence of anything which should alert him to the danger, the law does not require a defendant to anticipate specific acts of negligence of another.

*Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 234, 311 S.E.2d 559, 565 (1984) (citation omitted).

"[R]easonable unforseeability is the critical test for determining when intervening negligence relieves the original tortfeaser of liability." *Barber*, 130 N.C. App. at 385, 502 S.E.2d at 916 (awarding new trial after first determining the trial court's instruction on intervening negligence was supported by the evidence but

erroneously failed to reference foreseeability); *see Pope ex rel. Pope v. Cumberland Cnty. Hosp. Sys., Inc.*, 171 N.C. App. 748, 752, 615 S.E.2d 715, 718 (2005) (reversing entry of directed verdict for the medical negligence claims relating to the defendant hospital's labor and delivery nurses because the plaintiff's evidence, that the intervening cause alleged by the defendants was foreseeable in causing the decedent's injuries, was "sufficient to create an inference of causation for the jury").

Here, sufficient evidence demonstrates that Dr. Hearn could not anticipate Dr. Schnier's subsequent conduct. Two of Dr. Hearn's witnesses were tendered as experts in vascular surgery, and both testified that Dr. Hearn complied with the statutory standard of care. Both expert witnesses opined that the fracture of the stent was unforeseeable. Dr. Powell testified that it was "totally not foreseeable in any way" that the stent placed by Dr. Hearn would be fractured during a subsequent procedure performed by Dr. Schnier. Dr. Workman testified that after Dr. Hearn performed his surgery it was not reasonably foreseeable that a stent fracture would occur during the subsequent procedure performed by Dr. Schnier.

While Dr. Dahn testified that Dr. Hearn could anticipate subsequent procedures being needed or performed on a patient like Ms. Miles, who was receiving dialysis treatment, it was not foreseeable that the stent Dr. Hearn placed would be fractured. Dr. Dahn testified it was permissible for the stent to extend one or two millimeters into the superior vena cava. After being asked the significance of the

stent extending beyond one to two millimeters, he replied, "I think it's problematic. The likelihood that it'll result in a major problem is low, but, I think it's [a] problematic situation because now it sets the patient up for subsequent complication with the passage of any other device."

Although Dr. Dahn testified that Dr. Hearn's "final positioning of the stent set the stage for it's being sheared in half causing it to migrate," this statement merely opines the stent created a risk for some subsequent injury. It is not a concession Ms. Miles' injury could not have been the result of some insulating cause.

Moreover, on re-cross, Dr. Dahn affirmed his pre-trial deposition testimony that Dr. Schnier breached the standard of care by failing to recognize the position of the stent during his procedure. Dr. Dahn also opined that "the likelihood of having a sheared off stent is low, but, still significant." Dr. Dahn further testified that had Dr. Schnier performed his procedure properly, "the likelihood of having a sheared off stent is low."

Dr. Hearn's expert witnesses and Plaintiff's own expert witness provided sufficient testimony demonstrating that Dr. Schnier's intervening conduct was of such nature that Dr. Hearn "had no reasonable ground to anticipate it." *Adams*, 312 N.C. at 194, 322 S.E.2d at 173. Moreover, viewing the evidence in the light most favorable to Plaintiff, "[t]he well-settled rule in this jurisdiction is that except in cases so clear that there can be no two opinions among men of fair minds, the question

should be left for the jury to determine whether the intervening act and the resultant injury were such that the author of the original wrong could reasonably have expected them to occur as a result of his own negligent act." *Hairston*, 310 N.C. at 238, 311 S.E.2d at 567; *Floyd v. McGill*, 156 N.C. App. 29, 41, 575 S.E.2d 789, 797 (2003) ("The trial court properly permitted the jury to draw inferences from these facts and decide the issue of proximate cause. Since more than one inference could be drawn from the evidence, submission of the issue to the jury was appropriate."). Because two theories of proximate cause were presented at trial, the trial court did not err in instructing the jury to determine whether Dr. Schnier's intervening conduct insulated Dr. Hearn's alleged original negligence.

Plaintiff also contends she was prejudiced by the trial court's instruction on intervening negligence. Plaintiff specifically argues the trial court's "heavy emphasis on intervening negligence in its instructions" likely influenced the jury's decision in finding Dr. Hearn not negligent. We disagree.

The use of the North Carolina Pattern Jury Instruction is "the preferred method of jury instruction" unless a pattern instruction misstates the law. *Barber*, 130 N.C. App. at 385, 502 S.E.2d at 915 (citation and quotation marks omitted). In the present case, the trial court utilized N.C.P.J.I. 102.65, insulating/intervening negligence, and did not alter it substantively when it instructed the jury. "It cannot be said that it was error for the judge to state the law correctly to the jury . . . ."

*Boykin v. Kim*, 174 N.C. App. 278, 286, 620 S.E.2d 707, 713 (2005). Accordingly, Plaintiff's argument regarding prejudice is overruled.

II. Evidentiary Rulings

Plaintiff also argues the trial court erred when it allowed Dr. Hearn's expert witness on causation of permanent injury to opine on the applicable standard of care. Plaintiff specifically contends Dr. Rinaldi's testimony about placement of the stent was not admissible as a matter of law and, even if it were, the trial court's admission of his testimony was prejudicial. We disagree.

In reviewing evidentiary rulings by the trial court, "we defer to the trial court and will reverse only if the record shows a clear abuse of discretion." *Gray v. Allen*, 197 N.C. App. 349, 352, 677 S.E.2d 862, 865 (2009). "A court has abused its discretion where its ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.* at 353, 677 S.E.2d at 865 (internal citation and quotation marks omitted). "[A]dmission of incompetent evidence, even though it is not withdrawn, is no ground for a new trial unless prejudice is shown." *Smith v. Perdue*, 258 N.C. 686, 690, 129 S.E.2d 293, 297 (1963).

Here, a videotape of Dr. Rinaldi's deposition was played at trial. Plaintiff contends the following colloquy between defense counsel and Dr. Rinaldi "was inadmissible because it clearly went to the standard of care issues of whether [Dr.

Hearn] improperly placed the stent, an issue on which Dr. Rinaldi was not designated":

> Q. And where was the stent placed in this case as you understand it from your review of the medical records?
>
> A. Yes. It was extending from the innominate vein or brachiocephalic vein into the superior vena cava.
>
> Q. Okay. And is there anything unusual about the placement of that stent in that location?
>
> A. I don't think so. That is done frequently. And, in fact, stents can be placed in the superior vena cava when people have narrowings [*sic*] in the superior vena cava. I've personally done it myself, and it is a normal procedure.

Plaintiff's main contention is that the jury likely attached great significance to Dr. Rinaldi's testimony because the position of Dr. Hearn's placement of the stent was the crux of the issue at trial. However, providing a limiting instruction to the jury following the admittance of erroneous testimony may cure an alleged error in the admittance of such testimony. *See Chamberlain v. Thames*, 131 N.C. App. 705, 711, 509 S.E.2d 443, 447 (1998). "A jury is presumed to follow the court's instructions." *Nunn v. Allen*, 154 N.C. App. 523, 541, 574 S.E.2d 35, 46 (2002).

The trial court provided the following limiting instruction prior to playing the remainder of Dr. Rinaldi's testimony on the videotape:

> All right, members of the jury, before we go on, I want to instruct you and remind you that this witness is not offering any opinion as to whether Dr. Hearn's conduct adhered to or failed to adhere to the standard of care and you are not to consider his testimony for that purpose.

Any purported error in the admission of Dr. Rinaldi's testimony on standard of care did not prejudice Plaintiff because it was cured by the trial court's limiting instruction. Plaintiff has failed to show the trial court abused its discretion.

## Conclusion

The trial court did not err in instructing the jury on intervening negligence. Plaintiff was not prejudiced by the admittance of Dr. Hearn's expert witness testimony.

NO ERROR.

Judges TYSON and INMAN concur.