DIANNE ATKINS, PLAINTIFF v. RODNEY A. MORTENSON, M.D., DEFENDANT

No. COA06-854

(Filed 5 June 2007)

**1. Judgments— entry of default set aside—good cause—no significant harm versus grave injustice**

   The trial court did not abuse its discretion in setting aside an entry of default in a medical malpractice action even though defendant did not take further action after delivering the claim to his office manager. The facts suggest that plaintiff would not be significantly harmed by the delay if entry of default were set aside, while defendant would suffer grave injustice if it were not.

**2. Medical Malpractice— complex regional pain syndrome—failure to diagnose**

   The trial court did not err by granting summary judgment for the defendant in a medical malpractice case where there was no evidence to support the contention that the failure to diagnose complex regional pain syndrome actually caused plaintiff harm; plaintiff did not provide expert testimony that defendant breached his professional standard of care and that such breach caused plaintiff harm.

Appeal by plaintiff from orders entered 4 October 2004 and 15 March 2006 by Judge Michael E. Helms in Guilford County Superior Court. Heard in the Court of Appeals 19 February 2007.

*Douglas S. Harris for plaintiff-appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Deanna Davis Anderson, for defendant-appellee.*

HUNTER, Judge.

Dianne Atkins ("plaintiff") appeals from the trial court's decision to set aside an entry of default as well as the court's grant of summary judgment in favor of Rodney A. Mortensen, M.D. ("defendant"). We affirm the trial court's rulings in both instances.

Plaintiff became a patient of defendant when she saw him on 13 June 2001 for constant and severe pain in her left knee. An MRI revealed plaintiff was suffering from chondromalacia, a condition characterized by a tearing or thinning of the back side of the knee

cap. After a lengthy discussion with defendant as to her options, plaintiff chose to have defendant perform an arthroscopic exploration and debridement on 3 July 2001. When plaintiff's pain persisted after the surgery, defendant performed a manipulation and lateral release on 5 October 2001 and a further manipulation on 11 November 2001. Plaintiff discontinued her treatment under defendant shortly thereafter.

In January 2002, plaintiff saw Dr. Ralph Leibelt for a second opinion concerning the pain she was continuing to experience in her knee. Dr. Leibelt diagnosed plaintiff with complex regional pain syndrome, and stated in a letter and an affidavit that if defendant had not considered this diagnosis, he had failed to follow the appropriate standard of care.

On 29 June 2002, plaintiff filed an action against defendant, citing his failure to recognize the symptoms of complex regional pain syndrome and recommend appropriate treatment. Defendant was served on 20 July 2004 at his residence via certified mail. In accordance with the policy of defendant's place of employment, The Sports Medicine and Orthopaedic Center ("SMOC"), defendant delivered the summons and complaint to the office business manager, Ms. Kim Landreth. Pursuant to the procedures of SMOC, Ms. Landreth faxed the summons and complaint to MAG Mutual Insurance Company ("MAG") on 27 July 2004, and thereafter called MAG to notify them of the lawsuit. However, MAG never received the summons and complaint, and therefore did not assign an attorney to file an answer.

Plaintiff filed a motion for entry of default on 25 August 2004, and entry of default was granted by the Guilford County Superior Court on that same day. Plaintiff filed a motion for default judgment on 9 September 2004. The evidence presented at trial suggests defendant never received the motion for entry of default or motion for default judgment filed by plaintiff. Defendant's first knowledge of such actions was when he received the court calendar postmarked 21 September 2004 on which plaintiff's motion for default judgment appeared. Upon receipt of the calendar, defendant immediately contacted MAG and filed an answer. On 27 September 2004, defendant moved to set aside the entry of default, which the trial court granted on 4 October 2004.

Defendant moved for summary judgment on 16 February 2006. Dr. Liebelt, the only expert witness identified by plaintiff, testified during his deposition that defendant did not violate the stand-

ard of care in his diagnosis and treatment of plaintiff. Although Dr. Liebelt had initially expressed some concern over the actions taken by defendant, after reviewing the relevant records as well as defendant's deposition, he ultimately concluded defendant's actions were well within his professional duty of care. Dr. Liebelt further indicated that even if defendant had identified the complex regional pain syndrome at an earlier stage, it might not have had any effect on plaintiff's condition. In light of this evidence, the trial court granted defendant's motion for summary judgment on 16 March 2006. Plaintiff appeals.

I.

**[1]** Plaintiff first argues that the trial court erred in setting aside the entry of default because defendant failed to make the requisite showing of "good cause" to warrant such action. Specifically, plaintiff contends defendant failed to take a sufficiently active role in monitoring the progress of the lawsuit, which precludes a showing of "good cause" under Rule 55(d) of the North Carolina Rules of Civil Procedure. We disagree.

Rule 55(d) allows the court to set aside an entry of default upon a showing of "good cause." N.C. Gen. Stat. § 1A-1, Rule 55(d) (2005). As plaintiff suggests, courts of this state have found "the degree of attention or inattention shown by the defendant to be a particularly compelling factor" in deciding whether to set aside an entry of default. *Brown v. Lifford*, 136 N.C. App. 379, 384, 524 S.E.2d 587, 590 (2000). In general, courts have been "amenable" to setting aside such entries only where a defendant continued to monitor the case after referring the claim to his or her insurer. *Id.* "[W]here a defendant merely passed the case to the insurance company but took no further action," courts have been less inclined to set aside an entry of default. *Id.*

Indeed, on facts very similar to those here, this Court refused to set aside the entry of default due to the defendant's lack of attention to the claim filed against him. *See Cabe v. Worley*, 140 N.C. App. 250, 252-53, 536 S.E.2d 328, 330 (2000). In *Cabe*, the defendant delivered the summons and complaint to his insurance agent who assured him the documents would be forwarded to an attorney to handle his defense. *Id.* at 252, 536 S.E.2d at 330. After delivering the suit papers, however, the defendant had no further contact with his insurance company to inquire into the progress of the case. *Id.* When the defendant failed to file an answer, the trial court made an entry of

default against him and refused to grant the defendant's motion to set such entry aside due to his inattention to the claim. *Id.*

Although our opinion in *Cabe* focused primarily on the diligence of the defendant in assessing good cause, we have often balanced the defendant's diligence with the following additional factors when deciding whether to set aside an entry of default: (1) the harm suffered by the plaintiff by virtue of the delay and (2) the potential injustice to the defendant if not allowed to defend the action. *Automotive Equipment Distributors, Inc. v. Petroleum Equipment & Service, Inc.*, 87 N.C. App. 606, 608, 361 S.E.2d 895, 896-97 (1987); *see also First Citizens Bank & Tr. Co. v. Cannon*, 138 N.C. App. 153, 157, 530 S.E.2d 581, 584 (2000); *Brown*, 136 N.C. App. at 384-85, 524 S.E.2d at 590.

In the case *sub judice*, however, we cannot base our decision solely on the diligence of defendant. In *Cabe*, there was no indication the defendant had any type of meritorious defense for the injuries caused by his negligent driving. *See Cabe*, 140 N.C. App. at 251-52, 536 S.E.2d at 329-30. Here, in contrast, the merits of the defense available to defendant are undisputed as indicated by the trial court's award of summary judgment to defendant. Further, the multi-million dollar judgment and damage to defendant's professional reputation are significantly greater than the $25,000 in damages facing the defendant in *Cabe* when this Court refused to set aside the entry of default. *See id.* at 251, 536 S.E.2d at 329. Given the circumstances in the case at hand, defendant's diligence cannot be determinative as to the issue of setting aside the entry of default. Rather, we must weigh defendant's diligence against any harm to plaintiff from the delay or injustice to defendant if he is not allowed to defend the case.

The trial court's finding of good cause "will not be disturbed on appeal absent an abuse of discretion." *Brown*, 136 N.C. App. at 382, 524 S.E.2d at 589. This Court is not called upon to determine whether the facts of this case support a showing of good cause; instead, we are asked to review the trial court's reasoning to determine whether its finding of good cause in this specific case was "manifestly unsupported by reason or . . . so arbitrary that it could not have been the result of a reasoned decision." *Briley v. Farabow*, 348 N.C. 537, 547, 501 S.E.2d 649, 656 (1998). Under the circumstances here, and in light of the law's preference for decisions on the merits, we conclude that the trial court did not abuse its discretion in setting aside the entry of default.

Although the evidence presented here indicates defendant was less than diligent in handling the suit filed against him, the facts also suggest plaintiff would not be significantly harmed by the delay if the entry of default were set aside, whereas defendant would suffer grave injustice if it were not. In this case, defendant filed an answer only four days after what would have been required had he obtained an initial thirty-day extension. Therefore, the lapse of time from the point when plaintiff filed the complaint to when defendant filed his answer was not so great as to cause harm to plaintiff if the entry of default were set aside. Additionally, if the entry of default were not set aside defendant would be deprived of the opportunity to present a meritorious defense and would be subject to a substantial monetary judgment as well as a diminished reputation in the medical community.

Accordingly, we hold that the trial court did not abuse its discretion in setting aside the entry of default even though defendant did not take any further action after delivering the claim to his office manager. The potentially grave damage to defendant coupled with the relatively short delay in processing the claim support the trial court's finding of good cause.

Further, "[t]he law generally disfavors default and 'any doubt should be resolved in favor of setting aside an entry of default so that the case may be decided on its merits.'" *Automotive Equipment Distributors, Inc.*, 87 N.C. App. at 608, 361 S.E.2d at 896 (quoting *Peebles v. Moore*, 48 N.C. App. 497, 504-05, 269 S.E.2d 694, 698 (1980)). While it is clear that compliance with the time limitations established for filing an answer are important and defendants "'should not be permitted to flout them with impunity,'" the significance of allowing every litigant to present his or her side of a disputed controversy is also readily apparent. *Peebles*, 48 N.C. App. at 504, 269 S.E.2d at 698 (citation omitted). Failure to comply with these time limitations because of inadequate communication between an insured and his insurance company resulting in a short delay in answering the complaint does not warrant a multi-million dollar judgment where such a result cannot be justified based on the merits of the action. Accordingly, we affirm the trial court's decision to set aside the entry of default.

## II.

[2] Plaintiff's second argument on appeal is that the trial court erred in granting summary judgment in favor of defendant. Plaintiff contends that defendant owed her a duty of reasonable care in assessing

and diagnosing her physical condition and that defendant breached this duty of care. However, plaintiff presented no evidence at trial suggesting that defendant breached the standard of care nor that such a breach, if it occurred, caused her harm. Therefore, we affirm the trial court's award of summary judgment to defendant.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). When a defendant moves for summary judgment and offers evidence demonstrating that no genuine issue of material fact exists or that the plaintiff cannot make out an essential element of her claim, the plaintiff must then come forward with specific facts showing a genuine issue of material fact for trial. *Beaver v. Hancock,* 72 N.C. App. 306, 310, 324 S.E.2d 294, 298 (1985). "We review [the] trial court's order for summary judgment *de novo* to determine whether there is a 'genuine issue of material fact' and whether [defendant] is 'entitled to judgment as a matter of law.' " *Bolick v. County of Caldwell,* 182 N.C. App. 95, 97, 641 S.E.2d 386, 389 (2007) (quoting *Summey v. Barker,* 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003)).

In an alleged medical negligence case, as here, a plaintiff must offer evidence that establishes the following essential elements: " '(1) the standard of care [duty owed]; (2) breach of the standard of care; (3) proximate causation; and (4) damages.' " *Clark v. Perry,* 114 N.C. App. 297, 305, 442 S.E.2d 57, 61 (1994) (quoting *Lowery v. Newton,* 52 N.C. App. 234, 237, 278 S.E.2d 566, 570 (1981)). Because the standard of care in a medical malpractice action generally involves specialized knowledge, expert testimony is necessary to establish the applicable standard of care and any corresponding breach. *See id.* at 305-06, 442 S.E.2d at 62; *see also Hunt v. Bradshaw,* 242 N.C. 517, 523, 88 S.E.2d 762, 766 (1955). The only expert identified by plaintiff in this case was Dr. Liebelt, and his testimony was that defendant did not violate the standard of care in the course of treatment he pursued with plaintiff. Dr. Liebelt indicated that plaintiff's medical records did not contain any objective signs of complex regional pain syndrome, and therefore defendant's choice to not discuss said condition with plaintiff or pursue any corresponding avenue of treatment did not violate his duty of care. Accordingly, plaintiff failed to present evidence demonstrating the second essential element of her medical malpractice claim.

Even assuming defendant should have diagnosed the complex regional pain syndrome at an earlier stage, there is no indication that such a diagnosis would have improved plaintiff's condition or resulted in a different outcome than that currently experienced by plaintiff. Dr. Liebelt testified that there appears to be little or no benefit from many of the treatments for complex regional pain syndrome. He further explained that the physical therapy plaintiff contends should have been prescribed might have actually worsened her condition. Thus, assuming *arguendo* there is an issue of material fact as to whether defendant breached his duty of care by not making an early diagnosis, there is no evidence to support plaintiff's contention that the failed diagnosis actually caused her harm. As such, plaintiff also failed to present evidence related to the causation element of her negligence claim.

Because plaintiff failed to provide expert testimony that defendant breached his professional duty of care and such breach proximately caused plaintiff harm, she failed to sufficiently plead two essential elements of her claim for medical malpractice. Accordingly, the trial court properly granted summary judgment to defendant.

The trial court did not err in setting aside the entry of default or granting summary judgment to defendant. Therefore, we affirm.

Affirmed.

Chief Judge MARTIN and Judge STROUD concur.