ELMORE, Judge.
Lachey Baker (plaintiff) appeals from an order of summary judgment in favor of Jeffrey Gibbons, M.D., Garon R. Strong, PA-C, and Sandhills Emergency Physicians, P.A. (collectively, defendants), on plaintiff's negligence claim. We affirm.
I. Background
On 14 January 2011 at approximately 10:30 p.m., plaintiff brought her eleven-year-old son, David,[1] to the FirstHealth of the Carolinas Moore Regional Hospital Emergency Department. David presented with nausea, vomiting, fever, and leg pain. Plaintiff also reported that David had been vomiting over "the last couple of days" and "ha[d] not been taking in much." A triage nurse performed an evaluation and provided a urine cup in which David gave a urine sample.
David was then examined by Mr. Strong, a physician's assistant with Sandhills Emergency Physicians, P.A., who obtained a medical history and performed a physical examination. Mr. Strong administered a dose of anti-nausea medicine and a "PO (by mouth) challenge," which David passed by drinking and keeping down three different fluids. Mr. Strong's impression was that David had "acute nausea and vomiting." He discharged David with a to-go pack of anti-nausea medication and instructions to plaintiff to use clear fluids to keep David hydrated.
Dr. Gibbons was Mr. Strong's supervising physician at the time of David's visit. Dr. Gibbons did not participate directly in the care or treatment provided to David in the emergency department. He did, however, review and authenticate David's medical record as prepared by Mr. Strong. According to his affidavit, Dr. Gibbons found Mr. Strong's assessment, impression, and disposition to be reasonable and appropriate.
The day after David was discharged, plaintiff gave him the medication prescribed by Mr. Strong and fluids as instructed. Shortly before 1:00 a.m. on 16 January 2011, however, David woke up screaming of head pain and passed out suddenly on the floor. Plaintiff called an ambulance immediately. When emergency medical services arrived, David was unresponsive and his glucose levels were "very high." He was checked back into the emergency department, where doctors expressed that David was "very sick" and had to be transferred to the North Carolina Children's Hospital in Chapel Hill.
David was transported by helicopter to the children's hospital that same night and admitted to the pediatric intensive care unit. Doctors diagnosed him with hyperglycemic hyperosmolar syndrome (HHS), a condition rarely found in children. The HHS had caused cerebral edema and a hyperglycemic hyperosmolar nonketotic coma. After several weeks, David began to improve and was transferred to Charlotte for rehabilitation.
On 10 January 2014 plaintiff, in her capacity as guardian ad litem , filed a negligence claim against Dr. Gibbons, Mr. Strong, and Sandhills Emergency Physicians, P.A., for their treatment of David. Plaintiff alleged, inter alia , that defendants failed to properly treat and diagnose David's hyperglycemia, and the failed diagnosis led to the condition worsening to the point that David suffered the coma. Defendants moved for summary judgment on the basis that plaintiff was unable "to produce evidence to support an essential element of her claim, that defendants breached the applicable standard of care." The trial court granted defendants' motion by order entered 6 November 2015. Plaintiff timely appeals.
II. Discussion
Plaintiff argues that the trial court erred in granting summary judgment in favor of Mr. Strong and Sandhills Emergency Physicians, P.A., because plaintiff produced evidence to show that Mr. Strong breached the applicable standard of care. Plaintiff does not challenge the portion of the trial court's order granting summary judgment in favor of Dr. Gibbons.
We review de novo a trial court's order of summary judgment. In re Will of Jones , 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2015). The moving party bears "the burden of establishing the lack of any triable issue." Lord v. Beerman , 191 N.C. App. 290, 293, 664 S.E.2d 331, 334 (2008) (citing Roumillat v. Simplistic Enters., Inc. , 331 N.C. 57, 62-63, 414 S.E.2d 339, 341-42 (1992) ). A party may establish the lack of a triable issue by showing that an essential element of the opposing party's claim is absent. Id. If the movant succeeds, "the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a prima facie case at trial." Gaunt v. Pittaway , 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664 (2000) (citations omitted).
To establish a prima facie case of medical negligence, a plaintiff must provide evidence of the following elements: (1) a standard of care; (2) breach of the standard of care; (3) causation; and (4) damages. Atkins v. Mortenson , 183 N.C. App. 625, 630, 644 S.E.2d 625, 629 (2007) (citations omitted).
In support of their motion for summary judgment, defendants produced affidavits of Dr. Gibbons, Mr. Strong, and two experts: Gregory C. Risk, M.D., and Jeffrey W. Hinshaw, PA-C. Both experts opined that the care and treatment rendered by Mr. Strong to David, including the assessment of David's hydration status, "at all times met or exceeded the standards of practice applicable to physician assistants with training and experience similar to Mr. Strong, as that standard existed in Moore County, North Carolina, or similar communities, in 2011."
Plaintiff's sole expert, Bryan Carducci, M.D., testified as to the applicable standard of care during his deposition. Dr. Carducci testified that when David "presented with nausea, vomiting, fever, leg pain for several days, implying that he's been ill for more than just a couple of hours," Mr. Strong had a duty to ascertain the seriousness of the illness. He also explained: "[Y]ou can do that in a variety of ways, be it with laboratory evaluation or a detailed history taking or a detailed physical examination or all the above." Dr. Carducci would have agreed that Mr. Strong conducted a detailed history and physical examination in this case but for the fact that David's emergency room record, dictated by Mr. Strong, made no specific reference to David's mucous membranes or urine output. In Dr. Carducci's opinion "a better description of the hydration status of the mucous membranes and the urine output would be optimal to protect this case [from legal attack]." At the same time, he acknowledged that Mr. Strong may have asked these questions even though they were not specifically documented. And if Mr. Strong did recall whether he asked those questions, then Dr. Carducci would "trust what he's saying."
Mr. Strong clarified in his sworn affidavit that he assessed David's mucous membranes and urine output during his overall assessment:
7. Because [David's] mother reported that [David] had been vomiting for the last couple of days and not taking in much [sic], I incorporated an assessment of [David's] hydration status into my overall assessment of the patient.
8. Part of the hydration assessment included physical examination of [David's] eyes, which were clear and moist, and physical examination of [David's] ears, nose and throat (ENT), which were negative for abnormal findings. I assessed [David's] mucous membranes and would not have documented "ENT: Negative" had his mucous membranes been dry.
9. Along with asking the patient and his mother about how much [David] was taking in-not much per their report, I would have asked the patient and his mother about how much [David] was putting out. When the patient is a male child, I typically do this by asking "How's he peeing?" In this case, nothing abnormal was reported. Had the patient or his mother reported a change in the frequency or amount of his voiding, I would have recorded that as an abnormal finding.
(Emphasis added.) Mr. Strong's affidavit resolves the only two "caveats" that Dr. Carducci placed on his opinion that Mr. Strong conducted a detailed history and physical examination. It also shows that that Mr. Strong complied with the applicable standard of care testified to by Dr. Carducci.
Plaintiff contends nonetheless that Dr. Carducci's testimony is "replete with the opinion" that "Strong breached the standard of care." In particular, plaintiff quotes the following statement from Dr. Carducci's deposition: "I would expect either [Mr. Strong] or even the nurses to do at least a finger stick glucose, which is a commonly done and readily available study, and the nurses actually initiate that." Plaintiff omits, however, the hypothetical question from defendants' counsel that prompted Dr. Carducci's response: "[D]o you have any reason to think Mr. Strong would not have investigated diabetes if he was told that in the 13 days leading up to this ER presentation the child had excessive thirst, was drinking tons of juice and was urinating more frequently?" In other words, that portion of Dr. Carducci's testimony cited by plaintiff does not show that Mr. Strong breached the standard of care. It shows instead that had plaintiff reported to Mr. Strong that David was experiencing those symptoms for that length of time described above, then he would have expected Mr. Strong "to do at least a finger stick glucose." And because the remaining portions of Dr. Carducci's testimony cited by plaintiff are relevant only to causation, plaintiff has failed to produce evidence that Mr. Strong breached the applicable standard of care.
III. Conclusion
Defendants established the lack of a triable issue by proving that an essential element of plaintiff's negligence claim was absent. Plaintiff, in turn, failed to produce a forecast of evidence demonstrating specific facts showing a prima facie case for trial. The trial court, therefore, properly granted summary judgment in favor of Mr. Strong and Sandhills Emergency Physicians, P.A. See Hudson v. Gulf Oil Co. , 215 N.C. 422, 427, 2 S.E.2d 26, 29 (1939) ("If the act of the agent or employee is not negligent ... the master is not liable." (citations omitted)).
AFFIRMED.
Report per Rule 30(e).
Judges HUNTER, JR. and DILLON concur.

We use this pseudonym to protect the identity of the minor child.