KELLY CHAMBLISS AND CAROLINE CHAMBLISS, Plaintiffs-Appellees v. HEALTH SCIENCES FOUNDATION, INC., d/b/a COASTAL AREA HEALTH EDUCATION CENTER, d/b/a WOMEN'S HEALTH SPECIALTIES—NORTH, and JULIE RAMSEY, RNC, NP, Defendants-Appellants

No. COA04-1687

(Filed 7 March 2006)

**1. Appeal and Error— appealability—denial of motion for judgment on pleadings not reviewable**

Although defendant-appellants contend the trial court erred in a suit seeking compensatory and punitive damages, as a result of injuries resulting from unwashed sperm specimen in an insemination procedure, by denying defendant-appellants' motion for judgment on the pleadings, this issue is not reviewable on appeal because the trial court rendered a final judgment after a trial on the merits.

**2. Damages and Remedies— punitive damages—motion for directed verdict—unwashed sperm specimen in insemination procedure**

The trial court did not err in a suit seeking damages as a result of injuries resulting from an unwashed sperm specimen in an insemination procedure by denying defendant-appellants' directed verdict motion at the close of all evidence on the issue of punitive damages because appellant nurse admitted that though she was aware of the safety protocol in place at appellant health center, she violated that protocol in several ways including failing to examine the sperm specimen under a microscope prior to insemination, which evidence alone constituted more than a scintilla of evidence regarding whether to submit the question of punitive damages to the jury.

**3. Damages and Remedies— punitive damages—motion for judgment notwithstanding verdict—unwashed sperm specimen in insemination procedure**

The trial court did not err in a suit seeking damages as a result of injuries resulting from an unwashed sperm specimen in an insemination procedure by denying defendant-appellants' motion for judgment notwithstanding the verdict on the issue of punitive damages because: (1) appellants failed to assign error to any of the trial court's findings of fact or conclusions of law, and the failure to do so resulted in a waiver of the right to challenge

the sufficiency of the evidence; and (2) finding of fact number seven provided sufficient evidence for the jury to determine that appellant nurse acted willfully and wantonly with reckless indifference to the safety of her patient when she knowingly, consciously, and deliberately used an unlabeled syringe containing an unknown substance in plaintiff's insemination procedure knowing that to do so would expose plaintiff to a risk of harm.

**4. Damages and Remedies— punitive damages—motion to reduce or set aside award**

The trial court did not err in a suit seeking damages as a result of injuries resulting from an unwashed sperm specimen in an insemination procedure by denying defendant-appellants' request under N.C.G.S. § 1D-50 to set aside or reduce the punitive damages award because: (1) the trial court outlined both the findings of fact and conclusions of law upon which the determination of punitive damages was predicated; (2) since appellants failed to assign error to the pertinent findings and conclusions, they are binding on appeal; and (3) the trial court complied with the dictates of the statute by explaining in detail why punitive damages were justified in the instant case and why such an award was appropriate and not excessive.

**5. Damages and Remedies— punitive damages—motion for new trial**

The trial court did not err in a suit seeking damages as a result of injuries resulting from unwashed sperm specimen in an insemination procedure by denying defendant-appellants' motion for a new trial, because the trial court acted within its discretion.

Appeal by defendants from judgment entered 24 August 2004 by Judge W. Allen Cobb, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 13 September 2005.

*Shipman & Wright, L.L.P., by Gary K. Shipman and William G. Wright for plaintiffs-appellees.*

*Cranfill, Sumner & Hartzog, L.L.P., by Edward C. LeCarpentier, III, John D. Martin, Colleen Shea Collis and Meredith T. Black for defendants-appellants.*

*Comerford & Britt, L.L.P., by Clifford Britt; and Holly M. Bryan, for The North Carolina Academy of Trial Lawyers, amicus curiae.*

**CHAMBLISS v. HEALTH SCIENCES FOUND., INC.**

[176 N.C. App. 388 (2006)]

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Robin K. Vinson, for The North Carolina Medical Society, amicus curiae.*

CALABRIA, Judge.

Health Sciences Foundation, Inc. ("Foundation"), Coastal Area Health Education Center ("Coastal"), Women's Health Specialties-North ("Specialties"), and Julie Ramsey ("Ramsey") (collectively known as "appellants") appeal the 24 August 2004 judgment in favor of Kelly Chambliss ("Kelly") and Caroline Chambliss ("Caroline") (collectively known as "appellees") for injuries resulting from an unwashed sperm specimen in an insemination procedure). We affirm in part and find no error in part.

Appellees Kelly and Caroline Chambliss, both female, are life partners. Appellees desired to raise a family and concluded their best option was artificial insemination. Appellees looked to appellants Coastal and Ramsey, as well as Dr. Mark M. Pasquarette ("Dr. Pasquarette"), leader of a reproductive endocrinology and fertility practice,[1] for assistance. Appellees decided Kelly would undergo monthly intrauterine insemination procedures[2] whereby Caroline would inject the sample sperm into Kelly's uterus. Appellees obtained, with the help of Dr. Pasquarette, "pre-washed" donor sperm[3] from an accredited sperm bank in California. Non-"pre-washed" sperm had to be placed into a Sperm Select kit for cleansing while "pre-washed" sperm generally did not require such treatment. Once clean, the "washed" sperm remains in the Sperm Select syringe for the eventual insemination procedure). A Sperm Select syringe, which has the non-"pre-washed" sperm, looks completely different than the type of syringe used for "pre-washed" specimens, like those of appellees, that come from sperm banks.

---

1. Dr. Pasquarette's practice operates within Specialties which, as part of Coastal, provides educational and clinical services in the areas of obstetric and gynecological care. Coastal maintains and operates several health care facilities including Specialties. Foundation, a non-profit corporation, is the administrator of Coastal. Dr. Pasquarette supervised Ramsey, a reproductive endocrinology and fertility nurse at Specialties.

2. Intrauterine insemination is a form of artificial insemination where a "washed" sperm sample is inserted into the women's uterus via a catheter.

3. Pre-washed sperm, already cleansed, need merely be stored before insemination, while non pre-washed sperm had to be cleansed by the appellants prior to use in insemination procedures.

CHAMBLISS v. HEALTH SCIENCES FOUND., INC.

[176 N.C. App. 388 (2006)]

Appellees attempted, unsuccessfully, to get pregnant eleven times prior to arriving at appellants' facility on 26 August 2002 for their twelfth insemination procedure. On each prior occasion, appellees used the donor sperm from California in the insemination procedures. Two days earlier, 24 August 2002, Karen Hale ("Hale"), a registered nurse who worked at appellants' facility, prepared a sperm specimen for another patient. Hale and another registered nurse at the appellants' facility, Debbie Cushing ("Cushing"), along with Ramsey, were the only three nurses authorized to prepare specimens for artificial insemination procedures. Hale did the following in preparation for the 24 August 2002 procedure: drew a portion of the sperm into a Sperm Select syringe and cleaned it (the sperm used was not pre-washed); drew up a smaller sample of the now cleaned sperm into a second Sperm Select syringe for insemination; transferred a smaller portion of the cleaned sperm from this second syringe into a catheter for actual use; drew up the surplus, unwashed sperm into the second syringe and placed it in the incubator. This unwashed sperm specimen remained in the incubator in the syringe over the weekend.

The policies and procedures in place at appellants' facility for preparing a sperm specimen for insemination included confirming the donor number with the patient, matching the donor number in a log book, logging the donor sperm out of the sperm freezer, having two individuals initial this process, labeling the specimen, showing the vial of sperm to the patient and reconfirming the donor number, checking the specimen under a microscope and charting this process in the patient's medical chart. The intent of these policies and procedures was to protect patient safety and maximize patient health.

On 26 August 2002 Ramsey used the remainder 24 August 2002 unwashed sperm specimen from the incubator in the insemination procedure with Kelly and not Kelly's "pre-washed" donor sperm. The unwashed sperm specimen used by Ramsey was in the same unlabeled Sperm Select syringe. Kelly became violently ill almost immediately. Two days later on 28 August 2002 both Hale and Ramsey recognized the wrong sperm specimen was used in the insemination procedure. Ramsey and Dr. Pasquarette informed appellees of this error immediately. None of the policies and procedures in effect at appellants' facility to prepare a sperm specimen for insemination and protect patient health and safety were performed on 26 August 2002.

Appellees filed suit against appellants on 21 March 2003 seeking both compensatory and punitive damages. After a week long trial (21

June 2004 to 28 June 2004), the jury awarded appellees both compensatory and punitive damages. The trial court entered judgment in favor of appellees on 24 August 2004. On 1 September 2004 the trial court entered an order denying both appellants' motion for judgment notwithstanding the verdict and motion for a new trial as well as affirming a finding that the punitive damages award was in accordance with N.C. Gen. Stat. §§ 1D-1 and 1D-35. Appellants appealed from the judgment and orders on 22 September 2004.

## I. Judgment on the Pleadings:

[1] Appellants argue in their first assignment of error the trial court erred in denying their motion for a judgment on the pleadings. Appellants contend the complaint contains no allegations which, as a matter of law, would constitute evidence sufficient to support an award of punitive damages. This Court has held "[a] trial court's denial of . . . defendants' motion[] for . . . judgment on the pleadings is *not reviewable on appeal because the trial court rendered a final judgment after a trial on the merits.*" *Wilson v. Sutton*, 124 N.C. App. 170, 173, 476 S.E.2d 467, 470 (1996) (emphasis added).

In the instant case, the trial court rendered a final judgment after a trial on the merits. Thus, we reject appellants' assertion it is reviewable here. This assignment of error is overruled.

## II. Directed Verdict:

[2] Appellants next argue the trial court erred in denying their directed verdict motion at the close of appellees' evidence and at the close of all the evidence. The appellants contend the evidence presented was insufficient to support an award of punitive damages. We disagree.

First, appellants waived their initial directed verdict motion at the close of appellees' evidence by presenting evidence. "By offering evidence . . . a defendant waives its motion for directed verdict made at the close of plaintiff's evidence." *Boggess v. Spencer*, 173 N.C. App. 614, 617, 620 S.E.2d 10, 12 (2005) (citation omitted). Second, regarding appellants' renewal of their directed verdict motion at the close of all the evidence, "[i]n deciding whether to grant or deny a motion for directed verdict, 'the trial court must accept the non-movant's evidence as true and view all the evidence in the light most favorable to him.' " *Id.*, 620 S.E.2d at 13 (quoting *Williamson v. Liptzin*, 141 N.C. App. 1, 9-10, 539 S.E.2d 313, 318 (2000)). Further, "[t]he trial court should deny the motion if there is more than a scintilla of evidence

supporting each element of the non-movant's claim." *Id.* (citation and internal quotation marks omitted). "The standard of review of a denial of a motion for directed verdict is whether the evidence, considered in a light most favorable to the non-moving party, is sufficient to be submitted to the jury." *Id.*

In the instant case, a thorough review of the record and trial transcripts and testimony illustrates sufficient evidence existed to support submitting the question of punitive damages to the jury and consequently, to deny appellants' renewed directed verdict motion. In fact, appellant Ramsey admitted that though she was aware of the safety protocol in place at appellant Coastal, she violated that protocol in several ways including failing to examine the sperm specimen under a microscope prior to insemination. This evidence alone qualifies as more than a scintilla of evidence regarding whether to submit the question of punitive damages to the jury. This assignment of error is overruled.

III. Judgment Notwithstanding the Verdict:

[3] Appellants next argue the trial court erred in denying their motion for judgment notwithstanding the verdict ("jnov"). Appellants contend the evidence presented was insufficient to support an award of punitive damages. We disagree.

Appellants failed to assign error to any of the trial court's findings of fact or conclusions of law. "Where findings of fact are challenged on appeal, each contested finding of fact must be separately assigned as error, and the *failure to do so results in a waiver* of the right to challenge the sufficiency of the evidence." *Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 591, 525 S.E.2d 481, 484 (2000) (citations omitted) (emphasis added). Thus, "[w]here an appellant fails to assign error to the trial court's findings of fact, the findings are presumed to be correct." *Id.* (citation and internal quotation marks omitted). Consequently, "our review . . . is limited to the question of whether the trial court's findings of fact, which are presumed to be supported by competent evidence, support its conclusion of law and judgment." *Id.*, 136 N.C. App. at 591-92. In its 1 September 2004 order denying appellants' jnov motion, the trial court's finding of fact number seven states, in pertinent part, "[v]iewing the evidence in the light most favorable to the [p]laintiff, and resolving all inferences from the evidence in her favor . . . there was sufficient evidence for the jury to determine that Defendant Ramsey acted willfully and wantonly, i.e. with reckless indifference to the safety of her patient, when she

knowingly, consciously and deliberately used an unlabeled syringe containing an unknown substance in [p]laintiff's insemination procedure . . . knowing that to do so would expose the [p]laintiff to a risk of harm." Therefore, finding of fact number seven supports conclusion of law number one, "there was sufficient evidence to submit the issue of punitive damages to the jury," and consequently, appellants' jnov motion was properly denied. This assignment of error is overruled.

IV. Punitive Damages:

[4] Appellants next argue the trial court improperly denied their request pursuant to N.C. Gen. Stat. § 1D-50 to set aside or reduce the punitive damages award as there was insufficient evidence in the record. We disagree.

> N.C. Gen. Stat. § 1D-50 states:
>
> When reviewing the evidence regarding a finding by the trier of fact concerning liability for punitive damages in accordance with G.S. 1D-15(a), or regarding the amount of punitive damages awarded, the trial court shall state in a written opinion its reasons for upholding or disturbing the finding or award. In doing so, the *court shall address with specificity the evidence*, or lack thereof, as it bears on the liability for or the amount of punitive damages, in light of the requirements of this Chapter.

N.C. Gen. Stat. § 1D-50 (2005) (emphasis added). The trial court outlined, in exhaustive fashion, both the findings of fact and conclusions of law upon which the determination of punitive damages was predicated. Furthermore, since appellants failed to assign error to the pertinent findings and conclusions, they are conclusive on appeal. The trial court complied with the dictates of the statute in explaining in detail why punitive damages were justified in the instant case and why such an award was appropriate and not excessive. Thus, we hold the trial court committed no error in denying appellants' request pursuant to N.C. Gen. Stat. § 1D-50.

V. New Trial:

[5] Appellants next assign error to the trial court's denial of their motion for a new trial. "An appellate court's review of a trial judge's discretionary ruling denying a motion to set aside a verdict and order a new trial is limited to a determination of whether the record clearly demonstrates a manifest abuse of discretion by the trial judge."

*Pittman v. Nationwide Mut. Fire Ins. Co.*, 79 N.C. App. 431, 434, 339 S.E.2d 441, 444 (1986). "During review, we accord 'great faith and confidence in the ability of our trial judges to make the right decision, fairly and without partiality, regarding the necessity for new trial.' " *City of Charlotte v. Ertel*, 170 N.C. App. 346, 353, 612 S.E.2d 438, 434 (2005) (citing *Burgess v. Vestal*, 99 N.C. App. 545, 550, 393 S.E.2d 324, 327 (1990)) (quoting *Worthington v. Bynum*, 305 N.C. 478, 487, 290 S.E.2d 599, 605 (1982)).

In its 1 September 2004 order denying appellants' new trial motion, the trial court reviewed the evidence, including transcripts of jury instructions and trial testimony, and determined no grounds existed to support appellants' motion. We conclude the trial court acted within its discretion. This assignment of error is overruled.

Affirmed in part; no error in part.

Judges HUDSON and LEVINSON concur.