IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-235

Filed: 3 November 2015

Onslow County, No. 11 CVS 3813

TIMOTHY CLARKE, Personal Representative of the ESTATE OF ERICA BOHN, Plaintiff,

v.

ASHRAF GAD BAKHOM MIKHAIL, M.D., JESSICA LYN HARDIN, P.A., and COASTAL CAROLINA NEUROPSYCHIATRIC CENTER, P.A., Defendants.

Appeal by plaintiff from judgment entered 30 May 2014 and order entered 22 September 2014 by Judge Gary E. Trawick in Onslow County Superior Court. Heard in the Court of Appeals 25 August 2015.

> *Shipman & Wright, LLP, by Gary K. Shipman and W. Cory Reiss, and Childers, Schlueter & Smith, LLC, by C. Andrew Childers, for plaintiff-appellant.*

> *Cranfill Sumner & Hartzog LLP, by John D. Martin, Colleen N. Shea, and Kara O. Gansmann, for defendants-appellants.*

TYSON, Judge.

Timothy Clarke ("Plaintiff"), personal representative of the Estate of Erica Bohn, appeals from judgment entered by the trial court after a jury returned a verdict in favor of Ashraf Gad Bakhom Mikhail, M.D., Jessica Lyn Hardin, P.A., and Coastal Carolina Neuropsychiatric Center, P.A. (collectively, "Defendants"). Plaintiff also appeals from order denying his motion for a new trial. We find no prejudicial error.

## I. Factual Background

Plaintiff commenced this wrongful death and medical malpractice action against Dr. Ashraf Gad Bakhom Mikhail ("Dr. Mikhail"), Jessica Hardin ("Ms. Hardin"), and Coastal Carolina Neuropsychiatric Center ("CCNC") on 30 September 2011. Plaintiff alleged Ms. Hardin was negligent in prescribing and dosing a drug, Lamictal, to treat Erica Bohn's ("Ms. Bohn's") severe mental illness. Plaintiff filed an amended complaint seeking punitive damages on 3 December 2013.

### A. Erica Bohn's Medical History and Treatment

Ms. Bohn first sought treatment at CCNC, an outpatient psychiatric practice located in Jacksonville, North Carolina, on 26 February 2009. CCNC was the only clinic located in Onslow County with a full-time psychiatric practice in 2009. Prior to receiving treatment at CCNC, Ms. Bohn had been involuntarily committed five times by other healthcare providers between 2006 and 2008. A magistrate and two medical providers all determined Ms. Bohn demonstrated a desire to harm herself or others for each involuntary commitment.

Ms. Bohn was seen and evaluated by Dr. Mikhail, a psychiatrist and owner of CCNC. Ms. Bohn reported a history of diagnosis and treatment for paranoid schizophrenia to Dr. Mikhail. She also reported feelings of sadness, fear, and poor concentration. Dr. Mikhail noted Ms. Bohn displayed depressive symptoms of generalized sadness and poor concentration, and anxiety symptoms of excessive

worries, restlessness, muscle tension, specific anxiety, and panic attacks. Dr. Mikhail diagnosed Ms. Bohn with paranoid schizophrenia and generalized anxiety disorder.

Ms. Bohn reported numerous stressors in her life, which affected or resulted from her mental illness. She had been married and divorced twice. Her second husband was abusive. She lost custody of her only son, Eddie, after she held a knife to him and the Department of Social Services ("DSS") intervened.

Eddie also suffered from severe mental illness, and had been involuntarily committed and admitted to residential mental health programs numerous times beginning at nine years old. Ms. Bohn lived with and cared for her aging and ill parents.

Ms. Bohn possessed an increased risk of suicide attributed to her diagnosis, depressive symptoms, lack of financial resources, lack of friends, and lack of family support. She posed an even higher risk of suicide due to her prior history of hospitalizations.

Ms. Hardin, a physician's assistant under Dr. Mikhail's supervision at CCNC, was primarily responsible for Ms. Bohn's direct treatment thereafter. Ms. Bohn engaged in therapy and medication management at CCNC. She admitted past "suicidal ideations" in her therapy sessions at CCNC. Ms. Bohn had failed all typical and atypical antipsychotic medications her previous two psychiatrists had prescribed.

Ms. Hardin's treatment objective was to manage Ms. Bohn's fluctuating symptoms, to help keep her out of the hospital, and to prevent her from hurting herself or others.

In April 2010, Ms. Hardin prescribed Lithium as a mood stabilizer for Ms. Bohn's depression and anxiety. Ms. Bohn reported "she was having increased moments that she wanted to cry and felt very sad since having started the [L]ithium" at her 25 May 2010 appointment with Ms. Hardin. Ms. Hardin testified Ms. Bohn initially responded well to the Lithium, but certain medications intended to decrease depression can increase depressive symptoms instead.

Ms. Hardin was aware of Ms. Bohn's chronic mental illness, history of hospitalizations, lack of family support, lack of friends, multiple stressors in her life, and her general increased risk of suicide. Ms. Hardin's goal was to maintain Ms. Bohn's stability and function, and noted Ms. Bohn was "going downhill" at her 25 May 2010 appointment.

Ms. Hardin prescribed Lamictal to Ms. Bohn at this appointment. Ms. Hardin testified she based her decision, in part, on the fact that Ms. Bohn "was sad . . . [and] was already on or had been on antidepressants, which at times were effective and at times were not effective[,]" and "ha[d] initially responded well to the [L]ithium[.]" Ms Hardin explained "Lamictal is chemically similar to [L]ithium, but has a more favorable side effect profile[.]" Ms. Hardin also testified she

> was aware of the literature that supports Lamictal as
> augmentation for depression and the literature that

supports it in regards to its mood-stabilizing properties, and [Ms. Bohn] repeatedly throughout her chart was kind of speckled with that sadness, or the ups and downs or irritability, so I thought the Lamictal was appropriate for her.

Lamictal is a prescription drug and carries a "black box" warning, mandated by the United States Food and Drug Administration ("FDA"). The "black box" warning states Lamictal carries the risk of a severe rash, known as Stevens-Johnson Syndrome ("SJS"), in 0.8 out of every 1,000 adult patients. SJS causes blistering of the skin. The outer layer of a patient's skin, the epidermis, dies and separates from the lower layer, the dermis. SJS causes this rash to occur on less than ten percent of a patient's body.

SJS's rash can develop into toxic epidermal necrolysis ("TEN") if left untreated, which affects at least thirty percent of a patient's skin. The skin is the body's largest organ and plays a major role in the body's immune functions. Patients with TEN are at an increased risk for infection, due to the skin not being intact. A patient can die from complications arising from TEN. Large amounts of fluids, electrolytes, and proteins are lost through the open wounds, which further compromises the body's ability to fight infection because of this malnutrition.

The "black box" warning advises that the risk of developing SJS increases if the drug's titration, or dosing schedule, differs from the titration recommended in the package insert. The manufacturer's suggested titration of Lamictal is: 25 milligrams

daily for the first two weeks, 50 milligrams daily for weeks three and four, 100 milligrams daily for week five, and 200 milligrams daily for week six and thereafter.

The record from Ms. Bohn's 25 May 2010 CCNC appointment showed Ms. Hardin instructed Ms. Bohn to take 25 milligrams of Lamictal daily for the first week, and increase the dosage to 50 milligrams daily in the second week. Ms. Hardin and other medical experts testified to achieving success in titrating Lamictal at an increased rate and reaching a therapeutic dose.

Ms. Hardin stated she weighed the potential benefits of Lamictal against the potential, but statistically rare, risk of Ms. Bohn developing SJS. Ms. Hardin testified, in her clinical judgment, the increased titration of Lamictal was the best protocol to reach a therapeutic effect more quickly to manage Ms. Bohn's depressive symptoms.

Ms. Hardin noted Ms. Bohn's improvement at her 8 June 2010 appointment, and instructed her to continue taking 50 milligrams daily for the third week. At this visit, Ms. Bohn told Ms. Hardin her elderly father recently had a stroke, which had increased Ms. Bohn's stress level. Ms. Hardin wrote Ms. Bohn another prescription, which increased the dosage of Lamictal to 100 milligrams daily, and instructed Ms. Bohn to start taking 100 milligrams daily starting the fourth week. Ms. Hardin wrote the prescription for the fourth week during this appointment to ease the stress of returning one week later, so that Ms. Bohn could focus on caring for her ailing father.

Ms. Bohn did not contact or see any provider for treatment at CCNC after her 8 June 2010 appointment. She cancelled her subsequent two appointments at CCNC. Ms. Bohn never reported any issue with her medications to CCNC.

On 23 June 2010, Ms. Bohn presented at Onslow Urgent Care with a sore throat, yeast infection, blisters on her lips, and a rash, which had been present for two days. Ms. Bohn reported the medications she was currently taking, including Lamictal. Dr. Michael Mosier ("Dr. Mosier"), a burn trauma general surgeon and surgical critical care surgeon at Loyola University Medical Center, located in Chicago, Illinois, testified Ms. Bohn presented at Onslow Urgent Care with all of the "classic," textbook symptoms of SJS on this day.

Onslow Urgent Care did not diagnose Ms. Bohn with SJS, nor did they advise her to stop taking Lamictal. Onslow Urgent Care diagnosed Ms. Bohn with herpes simplex 2, bacterial conjunctivitis, leukoplakia of her oral mucous membrane, yeast infection, and canker sores.

Ms. Bohn's condition had drastically changed on 25 June 2010, two days after she was seen at Onslow Urgent Care. Ms. Bohn called for an ambulance, and emergency responders found her lying in a dark room in her home, unable to walk and having difficulty talking or moving. Ms. Bohn was "covered head to toe" with a blistering rash and sloughing skin.

Ms. Bohn was initially transported to the emergency department at Onslow Memorial Hospital for medical treatment. She informed the medical providers that she had recently started taking Lamictal. Ms. Bohn was transported to the burn center at UNC Hospital, located in Chapel Hill, North Carolina, for treatment of TEN. Ms. Bohn's initial assessment at UNC Hospital showed she had lost the top layer of skin on 57% of her body due to her untreated SJS rash progressing into TEN, leaving her skin raw and blistered.

Ms. Bohn was intubated for mechanical ventilation at UNC Hospital. She remained hospitalized for two months, and died of ventilator-acquired pneumonia on 29 August 2010.

### B. Pre-trial Motions and Expert Testimony at Trial

A jury trial began on 21 April 2014 in Onslow County Superior Court. Plaintiff filed various motions *in limine*. Plaintiff's first motion *in limine* sought to exclude medical records, criminal records, social services files, and other evidence Plaintiff deemed irrelevant and unfairly prejudicial to Ms. Bohn. Plaintiff's second motion *in limine* sought to exclude character evidence of Ms. Bohn and her son, Edward Clarke. During the hearing, these motions were denied in part and granted in part. The trial court entered a written order on 4 September 2014. The trial court prohibited Defendants from referencing Ms. Bohn's prior criminal history or her Satanic worship.

At trial, Plaintiff called one expert witness: Dr. Stephen Kramer ("Dr. Kramer"), a forensic psychiatrist who specializes in neuropsychiatry. Dr. Kramer agreed that patients diagnosed with paranoid schizophrenia are at an increased risk for suicide. He also agreed that depressive symptoms can be a core feature of paranoid schizophrenia, and Ms. Bohn's records from CCNC and other inpatient hospitals contained numerous references to her reporting depression and sadness.

Dr. Kramer admitted he had also prescribed medications outside the FDA label indications, and "[m]ost medications are prescribed outside of the original indication." He explained this is a common practice in medicine because "if the available medications haven't been effective . . . and if it makes any clinical sense, I will consider it even if it's off label [sic]." Although testifying as Plaintiff's sole causation expert, Dr. Kramer admitted a TEN expert would be better equipped to give an opinion about whether Ms. Bohn's SJS and TEN could have been treated or interrupted after its onset.

Psychiatrists Dr. George Corvin ("Dr. Corvin") and Dr. Rick Weisler ("Dr. Weisler") testified as experts for Defendants. Both doctors opined Lamictal was an appropriate medication for Ms. Bohn's condition. Dr. Corvin testified that in his own practice, he had prescribed doses of Lamictal at a faster rate than the manufacturer's guidelines suggest. Dr. Weisler testified he has prescribed Lamictal to treat bipolar disorder and acute depressive symptoms. Dr. Weisler stated he had experience with

patients developing SJS after starting Lamictal. He recalled the rash went away after his patients discontinued the Lamictal.

Dr. Corvin testified the records from Ms. Bohn's five previous conditions indicated she was "an individual with a very severe illness, a very fragile illness." He also stated her involuntary hospital admissions placed her at higher risk of suicide than if she had never been admitted. Both Drs. Corvin and Weisler testified Ms. Bohn's risk of suicide was much higher than her risk of developing SJS or TEN.

Defendants called two causation experts to testify at trial: Dr. Gary Goldenberg ("Dr. Goldenberg"), a board-certified dermatologist, and Dr. Mosier. Drs. Goldenberg and Mosier both testified Ms. Bohn presented with the "classic" SJS rash when she was treated at Onslow Urgent Care on 23 June 2010. Dr. Mosier agreed that Onslow Urgent Care's failure to diagnose SJS caused it to progress into TEN, thereby causing Ms. Bohn's condition to worsen to the degree she had to become mechanically ventilated to live, and causing her to ultimately die from pneumonia. Drs. Goldenberg and Mosier stated, in their expert opinion, if Ms. Bohn had been properly diagnosed on the date she sought care at Onslow Urgent Care and had discontinued the Lamictal, more likely than not the rash would have resolved and she would have survived.

At the close of Plaintiff's case on 8 May 2014, Defendants moved for a directed verdict on the issues of punitive damages and Plaintiff's principal negligence claim.

The trial court denied Defendants' motion for a directed verdict on the issue of negligence. On 14 May 2014, the trial court granted Defendants' motion for a directed verdict on Plaintiff's amended claim for punitive damages.

The jury returned a unanimous verdict in favor of Defendants. Plaintiff filed a motion for a new trial on 9 June 2014. The trial court entered an order denying Plaintiff's motion on 22 September 2014.

Plaintiff gave timely notice of appeal to this Court.

## II. Issues

Plaintiff argues the trial court erred by: (1) submitting the issue of superseding and intervening negligence to the jury; (2) submitting a jury instruction on superseding and intervening negligence, which was unsupported by the evidence and misstated the law; (3) granting a directed verdict in favor of Defendants on the issue of punitive damages; (4) admitting irrelevant and unfairly prejudicial evidence of Ms. Bohn's character; (5) denying Plaintiff's request to bifurcate; and (6) denying Plaintiff's motion for a new trial.

## III. Analysis

### A. Superseding and Intervening Negligence

Plaintiff argues the trial court erred by denying his motion for summary judgment and submitting the issue of intervening and superseding negligence to the

jury. Plaintiff also contends the instruction the trial court gave to the jury was not supported by the evidence and misstates the law.

### 1. Standard of Review

Plaintiff states this Court's review of an order *granting* summary judgment is *de novo. Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012). Plaintiff's proposed standard of review is inapplicable to the facts at bar. Denial of a motion for summary judgment is not reviewable on appeal from a final judgment after a trial on the merits of the case. *Harris v. Walden*, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985). Any improper denial of a motion for summary judgment is not reversible error when the case has proceeded to trial and has been determined on the evidence and merits by the trier of fact. *Id.*

A final judgment on the jury's verdict was entered after the jury heard and weighed the evidence, and reached a verdict on the merits in favor of Defendants. Under these facts, the trial court's denial of Plaintiff's partial motion for summary judgment on the issue of intervening negligence is not subject to appellate review. *Id.* (holding "denial of a motion for summary judgment is not reviewable during appeal from a final judgment rendered in a trial on the merits").

This Court reviews and considers jury instructions "in their entirety." *Estate of Hendrickson v. Genesis Health Venture, Inc.*, 151 N.C. App. 139, 150, 565 S.E.2d 254, 262 (citation omitted), *disc. review denied*, 356 N.C. 299, 570 S.E.2d 503 (2002).

The "appealing party must show not only that error occurred in the jury instructions but also that such error was likely, in light of the entire charge, to mislead the jury." *Id.* at 151, 565 S.E.2d at 262 (citation omitted). "Failure to give a requested and appropriate jury instruction is reversible error if the requesting party is prejudiced as a result of the omission." *Outlaw v. Johnson*, 190 N.C. App. 233, 243, 660 S.E.2d 550, 559 (2008) (citation omitted).

## 2. Analysis

The trial court incorporated the North Carolina Pattern Jury Instructions 102.28 and 102.65, and charged the jury in pertinent part as follows:

> In this case, the defendants contend that if one or more of them was negligent, which the defendants deny, then such negligence was not a proximate cause of the plaintiff's injury because it was insulated by the negligence of Onslow Urgent Care. *You will consider this matter only if you have found that one of the defendants was negligent.* . . . If the negligence of Onslow Urgent Care was such as to have broken the causal connection or sequence between the defendants' negligence and the plaintiff's injury, thereby excluding the defendant's [sic] negligence as a proximate cause, the negligence of Onslow Urgent Care would thus become as between the negligence of the defendants and the Onslow Urgent Care as the sole proximate cause of the plaintiff's injury.
>
> . . . .
>
> The burden is not on the defendants to prove that their negligence in any way was insulated by the negligence of Onslow Urgent Care. Rather, the burden is on the plaintiff to prove by the greater weight of the

evidence that the negligence of the defendants was a proximate cause of the plaintiff's injury.

(emphasis supplied).

Plaintiff argues the trial court erred by instructing the jury the burden was on Plaintiff to disprove the existence of a superseding, or insulating, cause of Ms. Bohn's injury and resulting death. Plaintiff contends this instruction misstates the law by placing the burden on Plaintiff to disprove the affirmative defense of superseding negligence. Plaintiff's argument misconstrues both the doctrine of insulating or superseding negligence and the instructions given to the jury.

As an established element of negligence, the burden rests upon a plaintiff to prove "by the greater weight of the evidence" that a defendant's conduct was the proximate cause of the injuries alleged in an action for negligence. *Wall v. Stout*, 310 N.C. 184, 201, 311 S.E.2d 571, 581 (1984). Long-established North Carolina case law and the Pattern Jury Instructions clearly state "[t]he doctrine of insulating negligence is an elaboration of a phase of proximate cause." *Childers v. Seay*, 270 N.C. 721, 726, 155 S.E.2d 259, 263 (1967); N.C.P.I.—Civil 102.65. The burden of proof does not shift to the defendant when an instruction on superseding negligence is requested. Superseding or insulating negligence is an extension of a plaintiff's burden of proof on proximate cause. *See Childers*, 270 N.C. at 726, 155 S.E.2d at 263; *Barber v. Constien*, 130 N.C. App. 380, 383, 502 S.E.2d 912, 914, *disc. review denied*, 349 N.C. 227, 515 S.E.2d 699 (1998); *see also* N.C.P.I.—Civil 102.65 ("The burden is

not on the defendant to prove that *his* negligence, if any, was insulated by the negligence of [another party]. Rather, the burden is on the plaintiff to prove, by the greater weight of the evidence, that the negligence of the defendant was a proximate cause of the plaintiff's [injury].") (emphasis in original); N.C.P.I.—Civil 102.28 n.1 ("Insulating negligence . . . is not a separate issue.").

At oral argument, Plaintiff's counsel asserted the burden shifted to Defendants to prove superseding or insulating negligence because Defendants filed a motion to amend their answer, in which they pled superseding negligence as an affirmative defense. We disagree.

Defendants' amended answer to Plaintiff's complaint, filed 6 November 2013, states in pertinent part as follows:

> If Defendants were negligent, which is specifically denied, Defendants' negligence is not a proximate cause of Plaintiff's injuries or damages. The superseding and intervening negligence of Onslow Urgent Care and its physicians and healthcare providers was a proximate cause of Plaintiff's injuries and damages in that Onslow Urgent Care failed to recognize, diagnose, and treat the symptoms of Plaintiff's alleged reaction to Lamictal. It was unforeseeable that Onslow Urgent Care would negligently fail to diagnose and treat Plaintiff when she presented at Onslow Urgent Care with known symptoms of a Lamictal reaction and reported to Onslow Urgent Care that she was taking Lamictal. But for Onslow Urgent Care's negligence, Plaintiff would not have contracted TEN and would not have suffered the injuries and death she suffered. Accordingly, Defendants hereby specifically plead the doctrine of insulating and intervening negligence in bar of Plaintiff's claims.

During oral argument, counsel for Defendants stated he asserted insulating and intervening negligence to request and obtain the specific jury instruction. *See* N.C.P.I.—Civil 102.65.

Defendants' superseding negligence averments were asserted beneath the heading "Sixth Defense." However, the text of the averments comports with the well-settled principle in North Carolina, which holds superseding or intervening negligence is an extension of the element of proximate cause. The burden of proof to show proximate cause remained with Plaintiff. *Muteff v. Invacare Corp.*, 218 N.C. App. 558, 565, 721 S.E.2d 379, 384 (2012) (holding contributory negligence is an affirmative defense, for which the burden lies with the defendant asserting it, but "superseding or insulating negligence[] is an elaboration of a phase of proximate cause[]").

The trial court's instruction to the jury did not require Plaintiff to *disprove* superseding or intervening negligence by Onslow Urgent Care. The trial court's jury instruction properly informed the jury of the following: (1) Plaintiff carries the burden "to prove by the greater weight of the evidence" that Defendants' negligence was a proximate cause of Ms. Bohn's injury and death; (2) Defendants did *not* carry the burden of proving their negligence, if any, was insulated by Onslow Urgent Care's negligence; and, (3) the issue of superseding negligence was to be addressed only if

the jury first found Defendants were negligent in the course of Ms. Bohn's medical treatment.

The trial court's jury instruction on superseding negligence did not improperly shift the burden of proof to Plaintiff to disprove Defendants' "affirmative defense." Insulating or superseding negligence is "an elaboration of a phase of proximate cause." *Childers,* 270 N.C. at 726, 155 S.E.2d at 263. The burden of proof remained with Plaintiff to prove Defendants' negligence, if any, was a proximate cause of Ms. Bohn's injury and death. The trial court's jury instruction did not improperly shift the burden of proof or misstate the law. This argument is overruled.

### B. Punitive Damages

Plaintiff argues the trial court erred by granting Defendants' motion for a directed verdict on the issue of punitive damages.

### 1. Standard of Review

This Court reviews a directed verdict to determine whether the non-moving party presented "sufficient evidence to sustain a jury verdict in [his] favor, or to present a question for the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 323, 411 S.E.2d 133, 138 (1991) (citations omitted).

To determine the sufficiency of the evidence, "all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant, giving the non-movant the benefit of every

reasonable inference which may legitimately be drawn therefrom and resolving contradictions, conflicts, and inconsistencies in the non-movant's favor." *Turner v. Duke Univ.*, 325 N.C. 152, 158, 381 S.E.2d 706, 710 (1989).

"A directed verdict is improper unless it appears, as a matter of law, that a recovery cannot be had by the plaintiff upon any view of the facts which the evidence reasonably tends to establish." *Sheppard v. Zep Mfg. Co.*, 114 N.C. App. 25, 30, 441 S.E.2d 161, 164 (1994) (citation and quotation marks omitted).

A jury instruction on punitive damages is warranted "when more than a *scintilla* of evidence exists from which the jury could find that defendant's tortious conduct was accompanied by a reckless disregard for plaintiff's rights." *Ellison v. Gambill Oil Co., Inc.*, 186 N.C. App. 167, 180, 650 S.E.2d 819, 827 (2007) (citations and internal quotation marks omitted), *aff'd per curiam and disc. review improvidently allowed*, 363 N.C. 364, 677 S.E.2d 452 (2009).

### 2. Analysis

"Punitive damages may be awarded, in an appropriate case . . . to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts." N.C. Gen. Stat. § 1D-1 (2013); *see Rhyne v. K-Mart Corp.*, 358 N.C. 160, 167, 594 S.E.2d 1, 7 (2004).

Recovery of punitive damages requires a claimant to prove by clear and convincing evidence that the defendant is liable for compensatory damages, and the

presence of one of the following aggravating factors: (1) fraud; (2) malice; or (3) willful or wanton conduct. N.C. Gen. Stat. § 1D-15 (2013). Our General Assembly has statutorily defined "willful or wanton conduct" as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7) (2013). Willful or wanton conduct requires more than a showing of gross negligence. *Id.*

Plaintiff argues he presented sufficient evidence to raise a genuine issue of whether Defendants acted with conscious and intentional disregard for Ms. Bohn's safety. Plaintiff asserts the evidence, taken as true and viewed in the light most favorable to him, supports an award of punitive damages. We disagree.

In the medical context, a medical provider acts willfully and wantonly when she knowingly, consciously, and deliberately places a patient at risk of harm by acting contrary to known protocols and procedures. *Chambliss v. Health Sciences Found., Inc.*, 176 N.C. App. 388, 393-94, 626 S.E.2d 791, 795, *petition for disc. review withdrawn*, 360 N.C. 532, 633 S.E.2d 677 (2006).

Plaintiff argues Ms. Hardin's titration or dosage of Lamictal at a higher rate than recommended by the manufacturer's guidelines constituted evidence of a "reckless indifference" for Ms. Bohn's safety and warranted the submission of punitive damages to the jury. All expert witnesses testified that the manufacturer's

guidelines for a particular titration are recommendations and do not establish the standard of care, or a breach thereof. Plaintiff failed to present any evidence, outside of this assertion, that Ms. Hardin's prescribing and titration of Lamictal was "willful or wanton," as required by N.C. Gen. Stat. § 1D-15.

The evidence presented showed Ms. Hardin used her clinical judgment to weigh the risks and benefits of prescribing and titrating Lamictal to Ms. Bohn. Ms. Bohn consistently reported depressive symptoms while being treated at CCNC. The medical expert testimony showed the prescribing and increased titration of Lamictal was appropriate for Ms. Bohn, in light of her symptoms, her history of failing other drugs, and her increased risk of suicide.

Ms. Hardin testified, and medical expert testimony confirmed, her decision to prescribe Lamictal at an increased titration was based on Ms. Bohn's conditions and medical history, and Ms. Hardin's clinical judgment, training, and experience. Ms. Hardin sought to reach a therapeutic dose sooner in order to benefit Ms. Bohn and her deteriorating condition. Experts in this case testified they had successfully titrated Lamictal at an increased rate.

The evidence also showed the label indicated any increased risk of rash with an increased titration was unproven. Ms. Hardin stated she believed the probability Ms. Bohn would develop a rash from Lamictal was much lower than Ms. Bohn's risk of suicide. Ms. Hardin testified she also knew from clinical experience that any rare

rash would resolve by discontinuing the Lamictal. This experience was consistent with every testifying medical expert's experience with Lamictal.

Contrary to Plaintiff's argument, the manufacturer's recommended titration schedule does not constitute a "policy or protocol," which Ms. Hardin could have violated. The manufacturer's recommended titration schedule is a recommendation only, from which medical providers can and do deviate. Plaintiff did not present any evidence Ms. Hardin's decision violated CCNC's policies or procedures, or breached any established standard of care. *See Chambliss*, 176 N.C. App. at 393, 626 S.E.2d at 794-95 (holding evidence defendant was aware of, but did not follow, safety protocols and procedures was sufficient evidence to submit issue of punitive damages to the jury). The trial court properly granted a directed verdict on the issue of punitive damages. Plaintiff's argument is overruled.

### C. Admission of Medical and Other Records

Plaintiff argues the trial court erroneously admitted into evidence the following: (1) Ms. Bohn's medical records; (2) certain Social Security and DSS records; and (3) Eddie's medical records (collectively, "prior records"). Plaintiff contends these records should not have been admitted because they were: (1) irrelevant to the issues of breach, standard of care, and causation; (2) unfairly prejudicial; and (3) not available to Defendants at the time Lamictal was prescribed.

### 1. Standard of Review

"Whether evidence is relevant is a question of law, thus we review the trial court's admission of the evidence *de novo.*" *State v. Kirby*, 206 N.C. App. 446, 456, 697 S.E.2d 496, 503 (2010) (citation omitted). Whether to admit or exclude evidence under Rule 403 of the Rules of Evidence is a decision which rests within the trial court's discretion. *State v. Peterson*, 361 N.C. 587, 602, 652 S.E.2d 216, 227 (2007) (citation omitted), *cert. denied*, 552 U.S. 1271, 170 L. Ed. 2d. 377 (2008). "[T]he trial court's ruling should not be overturned on appeal unless the ruling was manifestly unsupported by reason or was so arbitrary that it could not have been the result of a reasoned decision." *State v. Hyde*, 352 N.C. 37, 55, 530 S.E.2d 281, 293 (2000) (citation and internal quotation marks omitted), *cert. denied*, 531 U.S. 1114, 148 L. Ed. 2d 775 (2001); *see also State v. Young*, __ N.C. __, __, 775 S.E.2d 291, 306 (2015) ("Thus, the ultimate issue . . . is whether the trial court's decision to allow the admission of the challenged evidence was so arbitrary that it could not have resulted from the making of a reasoned decision.")

## 2. Analysis

### (a) Preservation for Appellate Review

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were

not apparent from the context." N.C.R. App. P. 10(a)(1); *see also State v. Jamison*, __ N.C. App. __, __, 758 S.E.2d 666, 671 (2014).

Our appellate courts have consistently held "[a] motion *in limine* is insufficient to preserve for appeal the question of the admissibility of evidence if the [party] fails to object to that evidence at the time it is offered at trial." *State v. Bonnett*, 348 N.C. 417, 437, 502 S.E.2d 563, 576 (1998) (citation and quotation marks omitted), *cert. denied*, 525 U.S. 1124, 12 L. Ed. 2d 907 (1999); *see also State v. Hayes*, 350 N.C. 79, 80, 511 S.E.2d 302, 303 (1999); *State v. Conaway*, 339 N.C. 487, 521, 453 S.E.2d 824, 845, *cert. denied*, 516 U.S. 884, 133 L. E. 2d 153 (1995); *T & T Development Co. v. Southern Nat. Bank of S.C.*, 125 N.C. App. 600, 602, 481 S.E.2d 347, 348-49, *disc. review denied*, 346 N.C. 185 486 S.E.2d 219 (1997).   Plaintiff filed a motion *in limine* to exclude Ms. Bohn's medical records from admission into evidence at trial.  Plaintiff failed to object when this evidence was offered at trial.  Plaintiff has failed to properly preserve this issue for appellate review.

### (b) Relevancy

Presuming Plaintiff properly preserved this issue for appellate review, Ms. Bohn's medical records were relevant to the issues of damages and causation. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2013).  Relevant

evidence may be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" N.C. Gen. Stat. § 8C-1, Rule 403 (2013).

Communications and records of confidential medical or mental health matters may be relevant and admissible when a party's claims place a person's medical or mental health condition in issue. *See Spangler v. Olchowski*, 187 N.C. App. 684, 691, 654 S.E.2d 507, 512-13 (2007) (holding confidential substance abuse treatment matters were relevant to patient's claims against a physician in a medical malpractice suit in which she alleged pain and emotional distress following gastric bypass surgery).

Here, the information contained in the prior records was relevant to both the issues of damages and causation. This information *was* known to Defendants at the time they treated Ms. Bohn at CCNC. Ms. Bohn reported her medical history, symptoms, and "stressors" to both Dr. Mikhail during her initial intake at CCNC, and to Ms. Hardin during their subsequent appointments.

The prior records illustrated a complete picture of Ms. Bohn's mental health for the jury. The prior records showed Ms. Bohn's mental health affected her ability to work, attend school, and care for her mentally ill son and elderly parents. *See* N.C. Gen. Stat. § 28A-18-2(c) (2013) ("All evidence which reasonably tends to establish any of the elements of damages . . . or otherwise reasonably tends to establish the present

monetary value of the decedent to the persons entitled to receive the damages recovered, is admissible in an action for damages for death by wrongful act."); *Hales v. Thompson*, 111 N.C. App. 350, 358, 432 S.E.2d 388, 393 (1993) (holding mother's testimony about decedent son's leukemia and the effect it had on their relationship was relevant, as it had the tendency to prove the extent of damages in wrongful death by motor vehicle action). Even if Plaintiff had properly objected when this evidence was presented at trial, Plaintiff has failed to show these records were not relevant concerning causation and damages, or that the trial court's admission was "manifestly unsupported by reason." *Hyde*, 352 N.C. at 55, 530 S.E.2d at 293. Plaintiff's argument is overruled.

### (c) Character Evidence

Rule 404(a) provides: "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion[.]" N.C. Gen. Stat. § 8C-1, Rule 404(a) (2013).

Plaintiff argues for the first time on appeal that the prior records were admitted as improper propensity or character evidence. Plaintiff did not assert Rules 403, 404, 405, or 608 as the basis for his objection to the admission of this evidence at trial. The North Carolina Rules of Appellate Procedure provide: "In order to preserve an issue for appellate review, a party must have presented to the trial court

a timely . . . objection . . . stating the specific grounds for the ruling the party desired[.]" N.C.R. App. P. 10(a)(1).

Notwithstanding Plaintiff's failure to object to the admission of this evidence as "character evidence," this evidence was properly admitted because experts for both parties relied on it to form their own opinions of the case, particularly with regard to the issues of proximate cause and damages. Ms. Bohn's prior records and Eddie's medical records were not admitted for any purposes to show "character evidence." *See* N.C. Gen. Stat. § 8C-1, Rule 703 (2013); *State v. Golphin*, 352 N.C. 364, 467-68, 533 S.E.2d 168, 235 (2000) (holding report expert relied upon to support his conclusions relating to co-defendant's character and upbringing, his relationship with his parents, his prior experience with police, his demeanor, and influence defendant had over him was admissible), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001).

An expert witness's opinions do not constitute improper character evidence under Rule 404. A party may present its own theory of the case by offering an expert. *See State v. Moss*, 139 N.C. App. 106, 111-12, 532 S.E.2d 588, 593 (2000) (concluding two experts' opinions were properly admitted and did not constitute evidence of bad character).

### (d) Prejudice

As a general proposition, appellate decisions holding that a trial court erroneously failed to sustain an objection lodged pursuant to N.C. [Gen. Stat.] § 8C-1, Rule 403, tend to rest on determinations that the admission of the

> evidence in question served little or no purpose other than to inflame the passions of the jury. . . . For that reason, one of the ultimate questions . . . is whether the evidence in question had *any* significant probative value or, alternatively, whether the *sole effect* of the challenged evidence was to unfairly prejudice the [party] in the eyes of the jury.

*Young*, __ N.C. at ___, 775 S.E.2d at 306-07 (emphasis supplied).

The admission of the prior records did not prejudice Plaintiff. As stated *supra*, most of the information contained in these records was known to Defendants through Ms. Bohn's initial intake interview and ongoing reports while being treated at CCNC. The trial court conducted a lengthy *voir dire* hearing to determine what Ms. Hardin had been told, reviewed, and knew while she was treating Ms. Bohn. Experts also used the prior records as a basis for their opinions on causation.

Plaintiff has failed to carry his burden to show how the admission of this evidence was likely to lead the jury to draw negative inferences about Ms. Bohn or to confuse the issues. No evidence shows the trial court's review process or decision to admit the prior records into evidence was "manifestly unsupported by reason." *Hyde*, 352 N.C. at 55, 530 S.E.2d at 293. This argument is overruled.

### D. Plaintiff's Motion to Bifurcate

Plaintiff argues the trial court erred by denying his motion to bifurcate the trial into liability and damages phases. We disagree.

### 1. Standard of Review

"The severance of issues for separate trials is in the trial court's discretion, and its decision will not be reviewed absent an abuse of discretion[.]" *Ashley v. Delp*, 59 N.C. App. 608, 610, 297 S.E.2d 905, 908, *disc. review denied*, 308 N.C. 190, 302 S.E.2d 242 (1982). A motion to bifurcate may be denied "for good cause shown." N.C. Gen. Stat. § 1A-1, Rule 42(b)(3) (2013).

> This Court is not called upon to determine whether the facts of this case support a showing of good cause; instead, we are asked to review the trial court's reasoning to determine whether its finding of good cause in this specific case was manifestly unsupported by reason or . . . so arbitrary that it could not have been the result of a reasoned decision.

*Atkins v. Mortenson*, 183 N.C. App. 625, 628, 644 S.E.2d 625, 628 (2007) (citation and internal quotation marks omitted).

## 2. Analysis

N.C. Gen. Stat. § 1A-1, Rule 42(b) provides: "Upon a motion of any party in an action in tort . . . the court shall order separate trials for the issue of liability and the issue of damages, unless the court for good cause shown orders a single trial." N.C. Gen. Stat. § 1A-1, Rule 42(b)(3).

Plaintiff argues because the admission of Ms. Bohn's and her son's prior records was not relevant to the liability issues and was prejudicial against Plaintiff, the trial court should have granted his motion to bifurcate the trial. Our review

confirms these records were both relevant and that the trial court did not abuse it's discretion in determining that the records were not unfairly prejudicial to Plaintiff.

The trial court inquired of counsel about bifurcation on the first day of hearing pre-trial matters. Counsel for Plaintiff stated he had not filed a motion to bifurcate. The trial court raised the possibility of bifurcation on two other occasions. Each time, Plaintiff's counsel did not move for bifurcation.

During oral argument, Plaintiff's counsel stated his change in trial strategy and motion to bifurcate the trial were made in direct response to the trial court's decision to admit Ms. Bohn's prior medical and DSS records into evidence. The trial court denied Plaintiff's motion and ruled it would be improper to bifurcate on the eve of trial, after the parties' trial strategy, schedule of subpoenas, and the order of witnesses were dependent on the case proceeding as a consolidated trial.

Plaintiff has failed to carry his burden to show the trial court's "finding of good cause in this specific case was manifestly unsupported by reason . . . or so arbitrary that it could not have been the result of a reasoned decision." *Atkins*, 183 N.C. at 628, 644 S.E.2d at 628. This argument is overruled.

<u>E. Plaintiff's Motion for a New Trial</u>

Plaintiff argues he should be granted a new trial due to the numerous errors, which occurred at trial. Plaintiff is not entitled to a new trial on any issue properly preserved and asserted, for the reasons discussed *supra*.

## IV. Conclusion

The denial of Plaintiff's motion for summary judgment is not reviewable on appeal. The trial court did not improperly shift the burden onto Plaintiff in its jury instruction on superseding and intervening negligence.

Plaintiff failed to present any evidence tending to show Ms. Hardin's decision to prescribe Lamictal was willful or wanton to warrant submission of punitive damages to the jury. The trial court properly granted Defendants' motion for a directed verdict on the issue of punitive damages.

Plaintiff waived appellate review of the denial of his motion *in limine*, because he failed to object when the prior records were proffered at trial. Ms. Bohn's and her son's prior medical and DSS records were relevant to the issues of causation and damages. Evidence shows Defendants were made aware of Ms. Bohn's medical and mental health history. Medical experts properly relied on these records in forming their opinions. At the pre-trial hearing, the trial court reviewed and exercised its discretion to rule on which information to allow and to exclude.

Plaintiff did not object to the introduction of these records on the basis that they were improper character evidence, and failed to preserve this argument on appeal. Plaintiff failed to carry his burden to show these records were unfairly prejudicial, or that the trial court did not abuse its discretion in admitting the prior records into evidence.

Plaintiff failed to carry his burden to show the trial court's decision to deny his motion to bifurcate was "manifestly unsupported by reason."

The trial court did not abuse its discretion in denying Plaintiff's motion for a new trial. Plaintiff received a fair trial, free from prejudicial errors he preserved and argued.

NO ERROR.

Judges BRYANT and GEER concur.